JOHN RALL v. PERCY T. COOK, ADMINISTRATOR OF THE ESTATE OF ADDISON P. COOK, DECEASED.

*Mortgaged chattels—Bill of sale fraudulently obtained by mortgagee —Trover—Measure of damages—Tender.*

1. A mortgagee who obtains a bill of sale of the mortgaged property by fraud, and under it, and before it is repudiated by the mortgagor, takes possession of the property, may, in an action of trover brought by the mortgagor, show the extent of his mortgage lien in reduction of damages. *Brink v. Freoff*, 40 Mich. 614, 615, 44 Id. 71, 72; *Daggett v. McClintock*, 56 Id. 53.

2. If in such a case a tender is necessary before bringing suit, the duty of the mortgagor to make it is unaffected by the fact

whether the mortgagee claims possession under the bill of sale or mortgage.

Error to Jackson. (Peck, J.) Argued July 11, 1889. Decided November 15, 1889.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion.

*Eugene Pringle* (*G. T. Gridley,* of counsel), for appellant, contended for the doctrine stated in the opinion.

*Blair, Wilson & Blair,* for plaintiff, contended:

1. The defendant cannot justify his wrongful seizure of the property under a fraudulent and void bill of sale by showing that he might have made a lawful seizure under chattel mortgages; citing *Dalton v. Laudahn,* 27 Mich. 529.

2. If the defendant's chattel mortgages could be used at all as a defense in this action, they could only be used to mitigate the damages, and they could not avail for this purpose unless in some way assented to by the plaintiff; citing *Bringard v. Stellwagen,* 41 Mich. 54; *Vosburgh v. Welch,* 11 Johns. 175; *Kaley v. Shed,* 10 Metc. 317; 3 Suth. Dam. 531, 532 (notes).

3. When one person demands property which is in the hands of another, who refuses to deliver it up, he must state the true grounds for such refusal. So, if defendant claimed a lien, it was his duty to inform the plaintiff to that effect, otherwise he could not afterwards set up the lien to defeat the plaintiff's suit; citing Wells, Rep. §§ 380, 381; *Thactcher v. Harlan,* 2 Houst. (Del.) 194; *Holbrook v. Wight,* 24 Wend. 169.

CHAMPLIN, J. Plaintiff sued in trover to recover damages for the conversion of certain personal property which he claims defendant's intestate took possession of under a bill of sale which the plaintiff claimed was procured by fraud.

At the time the bill of sale was executed by plaintiff he was indebted to defendant's intestate in some considerable sums, to secure the payment of which indebtedness Rall had executed several chattel mortgages, covering the greater part, if not the entire, of the personal property

described in the bill of sale. These mortgages authorized Addison P. Cook, the mortgagee, to take possession of the mortgaged property, and, at the time of taking the property in his possession under the bill of sale, were valid liens.

The question raised by the record is whether a party who holds valid liens upon personal property by way of mortgage, and who afterwards obtains a bill of sale of the same property by fraud, and under it, and before it is repudiated by the party defrauded, takes possession of the property, can, in an action of trover brought by the party defrauded, show the extent of his mortgage liens in reduction of damages.

I think he can. The action of trover has been called an "equitable action." 3 Suth. Dam. 526, 528. The damages awarded in such action should only be such as the party is entitled to under the circumstances of the case. In this case the bill of sale was not absolutely void, but voidable at the will of the party defrauded. When he is advised of the facts which constitute the fraud, he may ratify the contract, and then it will be as binding upon both parties as if it had not been tainted with fraud. It was at least binding upon Cook until Rall repudiated it. And Rall, by repudiating the bill of sale, could not place Cook in a worse position than he would have occupied had the bill of sale not been made. Cook had not discharged his chattel mortgages, and the indebtness secured thereby had not been paid. To permit Rall to recover the full value of the property would deprive Cook of the lien voluntarily given by Rall upon the property. His lien cannot be destroyed because he took possession under the bill of sale which Rall afterwards refused to recognize as valid, because obtained from him by fraud. The question is settled by the authority of this Court in *Brink v. Freoff*, 40 Mich. 610, 44 Id.

69 (6 N. W. Rep. 94); *Daggett v. McClintock*, 56 Id. 51 (22 N. W. Rep. 105), where the rule, and reason of the rule, is laid down, which is to avoid circuity of action. If Rall is permitted to recover as damages the full value of the property, Cook may immediately sue Rall, and recover as damages the amount of the indebtedness secured by the mortgages. Circuity of action should be avoided, if possible, and is unnecessary when the rights of parties can be fully adjusted in one suit.

The learned circuit judge held that if Cook did not seize the property in the first instance by virtue of his mortgages, or if, when request was made by Rall that he return the property to him, he did not inform Rall that he claimed possession under his mortgages, he was not entitled to have the amount secured by the mortgages deducted from the total value of the property converted. He based this ruling upon the supposition that Rall's action would be affected by the fact whether Cook claimed the possession of the property under the bill of sale or under the mortgages, saying in one case he would be obliged to tender the amount due upon the mortgages before he could bring action, and in the other case he would not.

I do not think the duty of Rall depended at all upon the question as to whether Cook claimed under the bill of sale or under the chattel mortgages. Rall repudiated the bill of sale as fraudulent and void as to him. He knew then that the bill of sale afforded no protection to Cook, but he also knew that Cook had valid liens upon the property, placed thereon by his own act, and that Cook had the right to retain possession under them; and it was as much his duty to make a tender in one case as in the other. But I think the tender would be unimportant, as is pointed out in *Brink v. Freoff, supra*.

I am of opinion that the judgment should be reversed, and a new trial granted.

Morse and Long, JJ., concurred with Champlin, J.

Sherwood, C. J., (dissenting). It is alleged by the plaintiff in this case that Addison P. Cook in his life-time converted of the property of the plaintiff 3 horses, 2 cows, 1 lumber wagon, 1 side-spring buggy, 1 single harness, 2 sets double harness, 1 reaper, 1 mower, 1 spring drag, 1 steel cultivator, 2 hand cultivators, 1 horse rake, 1 plow, 1 fanning-mill, 12 acres of corn, unhusked, 18 tons of hay, 30 acres of wheat on the ground, 60 bushels of wheat, 200 bushels of potatoes, 1 buffalo robe, 1 lap blanket, 1 hand-saw, 1 hammer wrench, 2 sets whiffle-trees, and one stump chain. The defendant lived in the town of Brooklyn, in the county of Jackson, and the plaintiff in the township of Liberty, same county. The plaintiff claims this property was converted by Cook under the following circumstances:

" On September 22, 1883, plaintiff was confined in the common jail of Jackson county, on a charge of having obtained a mowing-machine by means of false pretenses, and was required by the justice who issued the warrant to give bail in the sum of $300 to answer said charge. Plaintiff sent for defendant to visit him in jail, for the purpose of procuring such bail. Defendant, accompanied by his attorney, did visit plaintiff at the jail, and agreed to become surety for him, provided plaintiff would give him security on his personal property, to which proposi-tion plaintiff assented. Defendant and his attorney retired, and after a time returned with a written instru-ment, which defendant informed plaintiff was simply a security on his personal property to secure him against loss for going on his bail-bond, and that when plaintiff was discharged it should be returned to him. Plaintiff could neither read nor write, except merely to sign his own name, and did not understand the instrument; and, with the express understanding that defendant would be bail for him, and return the instrument on his dis-

charge, the plaintiff signed the bill of sale hereafter referred to.

"Defendant neglected to become surety as agreed, but went at once, with men and teams, to plaintiff's residence, and seized and removed all of plaintiff's personal property to his own residence, in Brooklyn, in the same county. Within two or three days, plaintiff employed another person to become his surety, and on his discharge returned home, and went to Brooklyn, and demanded of defendant return of the property; he refused to return it, and claimed to hold it as his own by virtue of an absolute bill of sale which plaintiff had signed while in jail. Plaintiff, being thus deprived of all his property, was compelled to seek employment elsewhere, that he might obtain subsistence for himself and family; and, being ordered by defendant, removed from the farm, and, as soon thereafter as his enforced poverty would permit, commenced this action."

Such was the claim and theory on the part of the plaintiff urged upon the trial, and the testimony tended to support his claim and theory.

The bill of sale reads as follows:

"For and in consideration of the sum of sixteen hundred and sixteen dollars to me in hand paid, I hereby sell and assign, transfer, and deliver to Addison P. Cook, of Columbia, Jackson county, Michigan, all my right and title and interest in the following described property, to wit: One bay mare, seven years old; one sorrel chestnut mare, eight years old; one cherry red cow, nine years old; one chestnut gelding, fifteen years old; one light top carriage, one double harness, one lumber wagon, one hundred and fifty bushels of wheat, one hundred and fifty bushels of oats, all corn now growing and in shock on Liberty farm, occupied by John Rall and owned by said Cook; all hay now in barn, and otherwise on said farm; one Perry Royce reaping-machine, bought of Tucker Bros., at Concord, Jackson county, Michigan; one red and white cow, ten years old; one double harness, now at said farm; one wire-tooth sulky hay-rake; two plows, one spring-tooth harrow; one two-horse Gale cultivator; two two-teeth corn cultivators. Now, it is understood by this bill of sale that the same is absolute and complete, and for a

valuable consideration to party, John Rall, in hand paid, and that this bill of sale is the result of a final settlement between the parties; that said settlement includes all connections of every description pertaining to a certain contract made and executed by and between Addison P. Cook, of Brooklyn, Jackson county, Michigan, of the first part, and one John Rall, formerly of Clarendon, Calhoun county, Michigan, of second part, wherein said Cook did agree to sell, and said Rall to buy, a certain piece of land and buildings in Liberty, Jackson county, Michigan, known as the north-west fractional quarter of section nineteen, town four south, one west, except six acres from south-east part thereof. Said contract bearing date April 1, A. D. 1880.

"It is further agreed, and by this instrument understood, that said contract is at end, and that said duplicate of said contract now in hands of Rall shall be by him redelivered to said Cook.

"And it is further understood hereby that said Cook (is by virtue of the sale and delivery of the property above specified) and does acknowledge payment in full from said Rall for all matters between them, and likewise does Rall, and that this bill of sale and receipt is, and shall be, final evidence of the same. Said Rall is to deliver up the possession of said premises at such a time as said Cook shall demand the same, but possession of personal property to pass immediately, but to remain on farm until said Cook shall choose to remove it."

On the part of the defendant, his claim was that this bill of sale was given upon a settlement of all matters between the parties thereto, including the plaintiff's interest in the farm upon which he lived, and which he at the time held under a contract of purchase from Cook, and that the same was absolute and valid; that Mr. Cook never agreed to become bail for the plaintiff under his criminal arrest; that the plaintiff was owing Cook, at the time the bill of sale was made, over $1,600; and that by that instrument he became free and discharged from all liabilities for the same, and left him owning the buggy and mower mentioned in the bill of sale, and some other property not mentioned in that instrument.

It was also the claim of the defendant, Cook, that, independent of the bill of sale, and unless bound by its acceptance, the defendant had the right, under certain chattel mortgages he held against the plaintiff, securing about the sum of $800, to seize and hold all the property described in the bill of sale, except the hay, and also the mortgaged property, which was omitted in the bill of sale. Evidence was offered tending to prove the claim made by the defendant upon his theory of the case. The cause was tried before Judge Peck, with a jury, in the Jackson circuit. The jury found a verdict for the plaintiff for $1,081.82. Defendant brings error. The verdict has settled all the contested facts in favor of the plaintiff.

The assignments of error all relate to the charge of the court, or to the refusals to charge. The plaintiff claimed that the bill of sale was fraudulently obtained, and was without consideration, and the verdict of the jury must be regarded to the same effect. It must therefore be held void, so far as our discussion is concerned, unless some misdirection was given in the charge.

It is claimed the court erred in refusing to give the following requests:

"2. That in the case it shall be found that the defendant has converted property, without a legal sale, to his own use, he must, in thus taking upon himself the responsibility for the full value of the property, be held to account to the plaintiff for the excess of the value beyond the amount of the lien; but if there is no excess, then the plaintiff is not entitled to any recovery against him.

" That in case there was at the commencement of this suit any of the property taken in the possession of the defendant, and if at that time the plaintiff had not made a tender of the amount due on the mortgage, and also demanded the restoration of that particular property; then, if there had been no bill of sale, as to the property so remaining in the possession of the mortgagee,

there is no evidence of a conversion, unless he has been paid or tendered the amount of his lien in full, by the application of the value of the other property actually converted, by being placed beyond the control of the mortgagee, or in some other manner fully paid or tendered the amount of his lien."

"6. That it is competent at any time for parties sustaining the relation of mortgagor and mortgagee, by agreement, to make the sale of the property absolute, and this may be done by a bill of sale; and it will be no objection if other matters are settled by the same agreement. If for any reason the instrument executed shall prove to be invalid, then the parties will be left in the same situation as if the instrument had not been executed; but in case there was, under the bill of sale, or other instrument expressing the sale, possession of the property taken by the mortgagee, he will then be in the same situation as though he had taken the property into his possession under the mortgage, and, under a misapprehension of his rights, had made a mortgage sale in an unauthorized way. He would, under such circumstances, be bound to account for the full value of the property, but only to return or pay for such portion of the property as might not be needed to pay his mortgage liens."

It was the claim of the plaintiff on the trial, and the verdict of the jury is to the same effect, that the property was taken and converted by A. P. Cook upon a void bill of sale. The first two requests above referred to assume the taking was under the chattel mortgages. That is not the case with which the court had to deal, as the verdict of the jury now shows; neither was it the case presented by the pleadings. Cook claimed the mortgage was extinguished by the bill of sale, and that he took the property by virtue of his purchase under the bill of sale. The defense of the defendant was not made under the chattel mortgages, and, while the rule contended for in these two requests states the law correctly in the case defendant's counsel attempt to make in this Court, it was not the case made in the court below,

77 MICH—44.

and has no application to the facts in this record; and the court was not in error in refusing to give them.

The first clause of the last of these three requests states a correct legal proposition, and I am not prepared to say that the second clause would not be correct in a case where the parties, in good faith and for honest purposes, had made the bill of sale upon a settlement had between them, but upon a better understanding of the facts it had been ascertained that a mistake had been made, by which the sale had become invalid; but, again, we say no honest presumptions or intentions can be assumed in this case, because of the fraudulent transactions of Cook in procuring the bill of sale; and, again, the rule contended for cannot be applied, and the court was correct in so holding.

It this case the demand for the property by the plaintiff was all the rescission necessary in this case. The plaintiff had nothing to return or surrender back to Cook, so far as the testimony shows.

It is further claimed by the defendant that the subsequent acts of the plaintiff had the effect to ratify the contract contained in the bill of sale, and should estop the plaintiff from making any claim to the contrary. These acts are claimed to be the demand for the property, without in terms demanding a rescission, and at the same time Cook requesting plaintiff to leave the farm, and Rall making no objection to leaving, the request being one contemplated by the terms of the bill of sale; abandoning his claim as purchaser of the farm by so leaving it, as requested; abandoning the wheat on the ground and the unhusked corn, and which he might have sold and given a good title to, but for the bill of sale; abandoning several hundred dollars' worth of hay, which Cook had no title to, except under the bill of sale. The

question of ratification was submitted to the jury by the court in the charge, at the request of defendant's counsel, and their verdict is against the defendant; and, further, we do not think it can be very well claimed that action taken by the plaintiff under stress of circumstances, or by reason of, or compelled by, the fraud of Cook, should estop the plaintiff from showing what were the true facts in the case, and that no such thing as a ratification was intended or thought of.

It is further claimed that the trial judge misstated the rule of damage in his charge to the jury. The court said upon this subject:

"The question of damages in trover is a simple one. It is the value of the property unlawfully converted at the time it was converted, with interest thereon at the date of the verdict."

We think the court stated the rule correctly. He had already said to the jury:

"In case you find that the property taken by the defendant into his possession was such as he had a valid lien upon, aside from the bill of sale; and also find that he was, as a matter of fact, proceeding upon that lien, to wit, the mortgages, and that he has neglected to take such legal steps to sell the property as the law contemplates,—such neglect would not deprive him of the full benefit of his mortgages, or subject him to any damages which the plaintiff would not have suffered, if, at a legal sale, the property had been sold at its full value.

"And, also, in that same connection, that in case the jury shall find that Cook was, as a matter of fact, proceeding under his mortgages, and if you find it to be true, as a matter of fact, that Rall applied to him in Brooklyn for information with reference to it, asking him about the return of the property, and Mr. Cook then let him know, or informed him in any way, that he was standing upon his bill of sale, and maintaining his rights upon his mortgages as well as upon his bill of sale; and shall also find that Cook converted the property described in any of these papers, without a legal.

sale, to his own use,—he must, in thus taking upon himself the responsibility for the full value of the property, be held to account to the plaintiff for the excess of that value beyond the amount of the lien. But if there is no such excess, then Mr. Rall is not entitled to any recovery against him."

We find nothing in the charge upon the subject of damages of which the defendant can justly complain.

It is further said by defendant's counsel that trover is an equitable action, and that the court may investigate the justice and equity of each particular case. This is true, certainly, so far as relates to the principles upon which damages are to be given; but we are not entirely satisfied upon such investigation that any injustice has been done by the verdict in this case. Cook received the land back which was held by plaintiff under the contract of purchase; and, if the testimony of the plaintiff is to be believed, there was no interest remaining due upon the contract, aside from the claim for this interest. Less than $500 was claimed by Cook as owing to him by plaintiff, and he claims $400 worth of hay was left in the barn. Cook also received all the personal property mentioned in the mortgages, which the testimony tends to show was worth considerably over $1,000.

On the plaintiff's theory and proofs it is difficult to say that defendant has lost any equitable right or interest by the verdict. But this Court is not called upon to decide that question.

I find no error in the record, and the judgment should be affirmed.

CAMPBELL, J., did not sit.