ADAM ILER v. ELICK L. BAKER AND NELLIE P. BAKER.

*Chattel mortgage—Trover—Demand—Damages.*

1. A pledgee or mortgagee in possession, who sells sufficient of the property to more than satisfy his claim thereon, becomes a bailee of the remainder, and is liable to pay over the surplus money realized on such sale; and a tender of the debt and demand for the remainder of the property are not necessary before bringing an action of trover if the pledgee asserts absolute title to the property, and denies all rights of the pledgor therein.

2. An instruction based upon a theory not asserted by either party, nor supported by any testimony, is erroneous.

3. In trover for the conversion of second-hand household goods, the market value of which is testified to by a competent witness, the court is not justified in assuming that the goods had no market value, and could not be replaced in open market, and in giving, as the rule of damages, their fair value to the owner, there being no testimony showing their peculiar value to the owner.

Error to Saginaw. (Gage, J.) Argued June 27, 1890. Decided August 1, 1890.

Trover. Defendants bring error. Reversed. The facts are stated in the opinion.

*W. H. Sweet* and *Trask & Smith,* for appellants, contended:

1. As to the necessity of tendering the money in order to make a refusal to surrender a conversion, and as to what constitutes a tender, counsel cited *Hunter v. Warner,* 1 Wis. 141; *Eastman v. Township,* 21 Iowa, 590; *Bacon v. Smith,* 46 Am. Dec. 549, and note.

2. As to the presumption of law that what the wife does in the husband's presence is done under his influence, and that he alone is liable, see *Com. v. Neal,* 6 Am. Dec. 105, and note.

*James H. Davitt,* for plaintiff, contended:

1. See the following authorities, which hold that a bailee who, having a lien, sets up a claim to the property in his possession different from that which he really has, or who denies his bailor's title to it, thereby waives a tender of the sum for which he might lawfully hold the same: *Hamilton v. McLaughlin,* 145 Mass. 20; *Lambard v. Pike,* 33 Me. 141; *Sketoe v. Ellis,* 14 Ill. 75; *Holbrook v. Wight,* 24 Wend. 169; *Winter v. Coit,* 7 N. Y. 293; *Rogers v. Weir,* 34 Id. 471; *Hudson v. Swan,* 83 Id. 552, and cases cited at p. 561.

2. The court charged the jury that as to those goods which could be found in the market,—those which had a market value,— the rule of damages was that value; "but if such goods were not to be found in the market, so that they could have been replaced by purchase in an open market, then the fair value of the goods to the owner would be the true rule of damages," which instruction was right; citing *Rose v. Lewis,* 10 Mich. 483; *Green v. Railroad Co.,* 128 Mass. 221 (35 Am. Rep. 370); *Railroad Co. v. Burke,* 55 Tex. 323 (40 Am. Rep. 808); *Starkey v. Kelly,* 50 N. Y. 676; *Stickney v. Allen,* 10 Gray, 352; 3 Suth. Dam. 494, 495.

3. Did the court properly submit the question of Mrs. Baker's liability to the jury? The question is whether there was any evidence tending to show her liability. Under the rule laid down at the common law, a married woman was liable for her tortious acts, unless committed in the presence and by the command of the husband, and, to exempt her from such liability, both of these elements must exist; citing *Cassin v. Delany,* 38 N. Y. 178; Cooley, Torts, 115–117; 9 Am. & Eng. Enc. Law, 822–826; *Nolan v. Traber,* 49 Md. 460 (33 Am. Rep. 277); *State v. Cleaves,* 59 Me. 298 (8 Am. Rep. 422); *Simmons v. Brown,* 5 R. I. 299 (73 Am. Dec. 66); *Manfg. Co. v. Heil,* 115 Penn. St. 487; *Miller v. Sweitzer,* 22 Mich. 391.

4. In this State the wife is alone responsible for her separate torts; citing How. Stat. §§ 7714, 8959; *Burt v. McBain,* 29 Mich. 260; *Weber v. Weber,* 47 Id. 569; and no reason is apparent why she should not be held liable for torts committed jointly with her husband in the same manner as a stranger might be, unless she was at the time acting under his coercion.

CHAMPLIN, C. J. This is an action of trover brought by the plaintiff against the defendants, as husband and wife, for the alleged conversion of a lot of household goods.

The plaintiff was engaged in the restaurant business in

the city of East Saginaw. On May 30, 1887, he and his
wife, Louisa Iler, executed and delivered to Henry
Turner, of East Saginaw, a chattel mortgage covering
their household goods, kitchen utensils, filter, refrigerator,
a sewing-machine, and wearing apparel, to secure the
payment of $30 in 30 days, with interest at 8 per cent.
When the 30 days came around they obtained a renewal
for another 30 days by paying Turner $3, and when the
time expired again, in July, they obtained a further
renewal by paying to Turner $3 for an extension of time
for 30 days.

On August 26 they made the defendant and his wife
acquainted with the fact that they had given this mort-
gage, and also that for lack of custom they were going
out of the business, and were fearful that they would
lose the property covered by the mortgage. The plaintiff
and his wife testified that the defendants offered to
befriend them, and let them have the money to take up
the mortgage, or to take an assignment of it to Baker,
and saying to them that they could have their own time
in which to pay it; that an arrangement was made by
which Elick L. Baker paid to Turner the money due him
upon the mortgage and the note thereby secured, and
Turner assigned the mortgage and delivered the note
and mortgage to Baker. Baker in this arrangement in-
sisted that he should also have an absolute bill of sale of
the property, in order that he might not be to the
expense of a sale under the chattel mortgage at public
auction in case they should fail to redeem it, and after
the assignment of the mortgage was executed and
delivered to him he prepared a bill of sale of the goods
of every description covered by the mortgage, except
wearing apparel. The goods were delivered into the pos-
session and control of Baker. Some were stored at his
house, and some at other places.

After the mortgage was executed, Iler went to Baker and requested the feather-bed and some other articles, including the sewing-machine, which Baker delivered to him and his wife. She shortly after went to Canada, where she had formerly resided, and he obtained work in the lumber woods. In the spring he came back to East Saginaw, his wife preceding him. She went to Baker and told him that she had the money to pay the debt, and requested the goods. He told her that he had none of her goods, except her child's picture, which she could have, and which he got and gave to her. She demanded the goods, but made no tender of the amount due. Afterwards her husband called upon Mr. Baker, and requested the goods. Baker claimed that the bill of sale conveyed to him the absolute ownership of the goods, and refused to deliver any of them. Plaintiff made no tender of the amount due. At the time plaintiff's wife made demand for the goods the defendant Mr. Baker told her that he had disposed of part of them, and intended to keep the balance, except the picture, which he gave her. It also appeared in evidence upon the trial that Baker had disposed of a portion of the goods, and that he had the balance in his possession. A portion he had disposed of to one Gottlieb Stork, amounting to $56.50. A part of the purchase price was applied on a note which Stork held against Mrs. Baker. The exact amount does not appear, nor does it appear what particular items of goods remained in Mr. Baker's possession, nor the value of them, as distinct from those that had been sold. The bill of exceptions states that it contains all the testimony given upon the trial.

It is claimed on the part of the defendant—

1. That no sufficient demand was made for the goods before suit brought.

2. That there was no tender of the amount due Baker.

3. That the court erred in reference to his charge respecting the liability of Mrs. Baker in this action.

4. That he erred as to the rule of damages which he laid down for the jury.

Some other errors of minor importance are relied upon, but which are not necessary to notice. We think the court was correct in its instruction to the jury with reference to the bill of sale. The circumstances detailed in the testimony presented a state of facts for the jury to determine whether or not the transaction was an absolute purchase by Mr. Baker, or whether the bill of sale was received by him as security for the money which he paid to Turner to obtain the note and mortgage of him. That certainly was the only consideration which passed between the parties, and the assignment of the mortgage was sufficient to support that consideration; and it is plain enough from all the testimony that the bill of sale could be considered in no other light than as an additional security in the hands of Mr. Baker for the money which he had paid. His position with reference to the property was that of a pledgee or mortgagee in possession. If the testimony of plaintiff was entitled to credence, then there was an extension of time for the payment of the money due to Mr. Baker. But the time was indefinite; and had he retained possession of the goods it would have been necessary for the plaintiff both to have made a tender of the amount due and to have made a demand for the delivery of the property before he could maintain an action of trover for its conversion. But Baker, being in possession as pledgee of the property, as the testimony shows, sold sufficient, and more than sufficient, to pay the debt due to him from Iler, in which case he became bailee for Iler of the remainder of the goods, and also it was his duty to pay over the surplus money realized on the sale over and above the debt due

to him on request; and in such case neither tender nor demand was necessary before bringing action where the pledgee asserted absolute title to the goods, and denied all right of property in the pledgor to them.

But we are unable to discover how Mrs. Baker can be held jointly liable with her husband in an action of trover for the conversion of the goods. The testimony shows that Baker advanced the money, took the assignment of the mortgage to himself, in his own name, and also a bill of sale signed by the plaintiff and his wife, running to himself, and all this with the consent of plaintiff and his wife. His refusal to deliver up what goods remained in his possession, and denying the right of Iler to them, do not constitute a conversion by Mrs. Baker. The only testimony which has a tendency in the least to show that she had anything to do with the conversion was the testimony of Stork, who claims that for part of the goods purchased by him from Baker he turned out a note which he held of Mrs. Baker, but even that would not make her liable for the conversion, unless she actually participated in the disposition of the property to him. It is true that he·says that Mr. Baker consulted with his wife from time to time as to what property he should let Stork have. But we think, in the relation which they occupied to each other as husband and wife, all these acts may be considered the acts of Baker.

But the court, in giving the case to the jury, placed her liability on different and peculiar grounds from those above stated. He charged the jury as follows:

" If you find from the evidence in this case that Mr. Baker had the Turner mortgage assigned to him, and the bill of sale executed to him of the goods in question, and the goods delivered to him, with the intention of obtaining the property and converting the same unlawfully to his own use and benefit, and that all the trans-

fers were as security, and you also find that Mrs. Baker knew that the transfers were as security only, and without the direction or coercion of her husband, but voluntarily, aided and assisted her husband in obtaining the transfers and in disposing of the property or in asserting absolute title to it, she having also the intention to aid her husband in converting unlawfully the property to his use, their joint use, or their separate use, she would in such case be liable for the value of the goods so converted. If what she did in this respect was without any such wrongful intention, but she was simply acting under the direction of her husband, or under his coercion, or simply being with him and assisting him in a general way that she supposed was a lawful act on her part, she would not be liable."

In these instructions we think the court erred. There is no special count in the declaration charging fraud upon Baker and his wife in the procuring of the mortgage, or any intention to defraud plaintiff by obtaining possession of the property under the guise of taking it as security, and then converting it to their own use, and this portion of the charge is entirely without testimony to support it. It was a theory which neither side asserted, and which no testimony supported.

The court also erred with respect to the rule laid down for the guidance of the jury in arriving at the damages. Upon this subject he instructed the jury as follows:

"With reference to the value of the goods in a case of this character, the general rule of law is that if a party is entitled to recover damages he is entitled to recover the market value of the goods converted. But the rule presupposes that the goods converted were marketable property; otherwise the rule does not apply. The rule that the true rule of damages is the market value is the rule where the property converted is marketable property; that is, property for sale in open market, such as stores and other places, where a party who has lost goods can go and replace them by purchase. Now, with regard to these goods, if such goods as the jury find from the evidence in this case that the plaintiff could replace by

going in the market and buying them,—that is, goods of the same general character and condition,—(remember, these goods had been used; were not all new), if you find from the evidence in this case that they could go into the market in East Saginaw and buy second-hand goods as good as those were, if you find they were converted by the defendant or the defendants, then the true rule of damages would be the value of these goods in the market; but if such goods were not to be found in the market, so they could have been replaced by purchase in an open market, then the fair value of the goods to the owner would be the true rule of damages."

The character of these goods, as indicated by the declaration, was, as stated before, household goods, tableware, furniture, etc., such as are used by any party in keeping house. They were second-hand goods, and as such had a value in the market, as appears from the testimony in the case. There was no article, such as family pictures or heir-looms, which had a special value to the owner aside from its market value. The testimony of the witness Becker, who had been engaged in dealing in second-hand household furniture and other goods for years in East Saginaw, showed that there were several second-hand dealers in the city following the business, and that he had been requested by Mr. and Mrs. Iler to examine their goods, with a view of selling them to him, previous to the assignment of the mortgage to defendant Baker. He had taken a list of the goods, and had placed a value upon each item, and he testified that these goods had a market value in the second-hand market, and that they could be purchased in the second-hand stores at the value he placed upon the goods, which was $77. In view of this testimony, and the absence of any testimony showing a peculiar value in the goods to the owner, the court was not justified in assuming that these goods had no market value, and could not be replaced in open market where such goods are dealt

in, and he erred in giving the rule to the jury that the damages would be the fair value of the goods to the owner.

Judgment is reversed, and a new trial granted.

The other Justices concurred.