JOHN SPOON v. THE CHICAGO & WEST MICHIGAN RAIL-
WAY COMPANY.

*Railroad companies—Construction of side track—Mortgage—After-
acquired property—Conversion.*

Neither the mortgagee of a railroad, nor the purchaser under a
foreclosure of the mortgage, acquires any lien upon or title to
a side track built by the company upon adjoining land, under
an agreement that it is to become the property of the land-
owner.

Error to Kent. (Grove, J.) Argued May 21, 1891.
Decided June 5, 1891.

Case. Defendant brings error. Affirmed, without costs.
The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant, contended:

1. The mortgage being on the entire road, etc., the rails of which
the side track was constructed became a part of and subject
to the mortgage by accession; citing *Pierce v. Emery*, 32 N. H.
485; *Railroad Co. v. Woelpper,* 64 Penn. St. 366.

2. Rolling stock and materials for repairs, designed to be attached
to the realty, are real estate; citing *Palmer v. Forbes*, 23 Ill.
301; *Coopers v. Wolf*, 15 Ohio St. 523.

3. As between a mortgagee and an execution creditor, rolling stock
of a railway company, mortgaged with the railroad, is a part
of the realty; citing *Loan & Trust Co. v. Railway Co.*, 3 Dill.
412; *Coe v. Pennock,* 2 Red. Ry. Cas. 667; *Gue v. Canal Co.*,
24 How. 259; *Railroad Co. v. James*, 6 Wall. 750; *State v.
Railway Co.*, 18 Md. 193; and iron rails constitute a part of
the railroad, and pass by the mortgage on the road; citing
*Navigation Co. v. Railroad Co.*, 35 N. J. Eq. 379.

4. A railroad company may mortgage not only the then acquired
property, but all such property requisite for the exercise of its
franchise as may be acquired in the future; citing *Pennock v.
Coe*, 23 How. 117; *Dunham v. Railway Co.*, 1 Wall. 254; *Rail-
road Co. v. Cowdrey*, 11 Id. 480; *United States v. Railroad
Co.*, 12 Id. 362; *Shaw v. Bill*, 95 U. S. 15; *Williamson v.

*Railroad Co.*, 1 Biss. 198; *Morrill v. Noyes*, 56 Me. 458; *Seymour v. Railroad Co.*, 25 Barb. 284; *Stevens v. Railroad Co.*, 31 Id. 596; *Railroad Co. v. Lampson*, 47 Id. 533; *Butler v. Rahm*, 46 Md. 541; *Meyer v. Johnston*, 53 Ala. 324; *Pierce v. Railroad Co.*, 24 Wis. 551.

*G. A. Wolf* and *McGarry & McKnight,* for plaintiff, contended:

1. When donations and benefits have been conferred upon a railroad corporation, and accepted by it, as a consideration for locating and operating a road in a particular place, and furnishing to the donors facilities connected therewith, as private side tracks, the company is liable in damages for a breach of its agreement; citing 1 Ror. R. R. 277; *State v. Railway Co.*, 71 Iowa 410; *Chapman v. Railroad Co.*, 6 Ohio St. 119; *Watterson v. Railroad Co.*, 74 Penn. St. 208; *Railroad Co. v. Compton*, 2 Gill, 20; *Railway Co. v. Molloy*, 64 Tex. 607; *Hubbard v. Railroad Co.*, 63 Mo. 68.

2. The foreclosure proceedings, and the reorganization of the defendant, did not deprive plaintiff of his rights in the premises, because—

   *a*—Defendant had notice of such rights, and purchased subject thereto. The plaintiff received no compensation for his land other than the railway facilities afforded by the construction of the road, which was the sole consideration for the deed, as stated therein; which deed, therefore, was notice to defendant of the rights of the plaintiff, and it was charged with notice of the recitals in the deed, because it purchased and claims through and under it; citing *Railroad Co. v. Reeves*, 64 Ga. 492; *Fitzhugh v. Barnard*, 12 Mich. 104.

   *b*—The mortgage attached to plaintiff's rights, if at all, as after-acquired property, which defendant holds subject to all antecedent equities; citing *U. S. v. Railroad Co.*, 12 Wall. 362; *Fosdick v. Schall*, 99 U. S. 235; *Loomis v. Railroad Co.*, 17 Fed. Rep. 301; *Railroad Co. v. Railroad Co.*, 7 S. C. 433; *Pennock v. Coe*, 23 How. 117.

   *c*—The defendant appropriated the property of plaintiff, secured solely through contract relations, without tendering or paying other or different compensation than the contract prescribed, and thus became bound by its terms; citing *Railroad Co. v. Railroad Co.*, 7 S. C. 410; *Railway Co. v. Griffin*, 92 Ind. 487.

McGRATH, J. In 1870 the Chicago & Michigan Lake Shore Railroad Company projected a line of road from

St. Joseph to Muskegon by way of Holland, Spoonville, and Nunica. This company sought aid and assistance along its proposed line. Among others, it applied to plaintiff for right of way and assistance. The negotiations resulted in a deed of the right of way across plaintiff's farm, involving about 15 acres of land, the payment to the railroad company of $2,000, the establishment and construction of the main line of railroad, the establishment of a depot, and the building on plaintiff's land of a side track from the main line to plaintiff's mill. After the construction of the railroad and the establishment of the depot and side track, plaintiff bought a large tract of pine land, chiefly valuable for timber, and expended a large sum of money in the repair of his mill, preparatory to carrying on extensive lumbering operations, expecting and relying upon permament railway facilities and advantages at Spoonville.

In order to raise money for the construction of its road, the railroad company mortgaged its present and future to be acquired property. This mortgage was subsequently foreclosed, the property bid in by a purchasing committee, a new company organized, connecting lines consolidated therewith, and there finally emerged from such foreclosure and reorganization a consolidation under the name of the Chicago & West Michigan Railway Company. During the process of foreclosure the line was operated by one George C. Kimball as receiver, and after the reorganization and consolidation Mr. Kimball became vice-president and general manager. The last-named company, the present defendant, assumed all legal duties and obligations, both public and private, of the several consolidated companies, and became the owner of and vested with all the property, real and personal, of each of said companies. The mortgage which was foreclosed was given on the 12th day of October, 1870, and the deed of the

master in chancery was executed on the 15th day of November, 1878. The consolidation of the defendant and the connecting lines above mentioned occurred October 1, 1881, and the defendant has ever since continued to exercise the duties, franchises, and privileges of a railroad company. The deed from plaintiff to the railroad company for the right of way was dated October 17, 1870, but was not delivered till about the time it was recorded, —January 11, 1871. Plaintiff was not made a party to the foreclosure proceedings, and, if the mortgage attached to the property deeded by him to the railroad company, it attached only as after-acquired property.

About Sunday, December 4, 1881, Mr. Kimball, as general manager, directed Thomas Murphy, who was at that time train-master and road-master of the defendant, to get a gang of men together, and proceed to Spoonville, get there by daylight Sunday morning, and get the iron off from plaintiff's land before night. Mr. Murphy, under these instructions, proceeded to do as he was directed, and commenced early in the morning, and removed the iron from the side track in question. Plaintiff, hearing the noise and confusion, went out and learned what was being done, and forbade the removal of the iron, claiming it as his own. The defendant's agents and servants paid no attention to him, but, on the contrary, removed all but the ties from the side track, and converted the iron to its own use. The company further took up the iron on the main line, and at once discontinued the running of trains by the way of Spoonville, and thus denied to plaintiff the railway facilities at that point, the nearest railroad station being Nunica, about three miles north.

Upon the trial, the case naturally divided itself into two general branches:

1. That relating to the right of recovery for the discontinuance of railway facilities generally at Spoonville.

2. That relating to the right of recovery for the conversion of the iron on the side track.

The trial court withheld from the consideration of the jury the first branch of the case, and directed them that the defendant was not chargeable at all with any duty arising out of the contract between plaintiff and the Chicago & Michigan Lake Shore Railroad Company. Upon the second branch, however, the trial court submitted the case to the jury to determine whether the railroad company or plaintiff owned the iron. The jury found for plaintiff, and defendant appeals.

To the ruling on the first branch of the case plaintiff alleged exceptions, and has taken a cross-appeal, and, in the event that this case is reversed upon other grounds, desires to have the legality of the trial court's ruling upon this branch of the case reviewed; but as the plaintiff is anxious to bring the litigation to an end, and the jury have found a verdict in his favor for the value of the iron converted, he desires upon the whole record to have the case affirmed.

The plaintiff insisted that, under the agreement made with the railroad company, the side track, upon its construction, became plaintiff's sole property; that the deed to the company conveyed a right of way for the main line only, and that the side track was constructed upon plaintiff's property; that, inasmuch as the side track was the property of the plaintiff, it was not covered by the mortgage given before its construction, which was subsequently foreclosed, and that the side track was a part of the consideration for the grant of the right of way and the payment of the sum of $2,000. The contract was in writing, but its loss was shown, and its contents proved by parol.

The only questions raised by defendant's brief are:

1. That, the mortgage being for the entire road, the rails of which the side track was constructed became a part of and subject to the mortgage by accession.

2. That the contract as proven did not show that the title of the iron upon the side track should pass to plaintiff.

If, as a matter of fact, the agreement between the company and the plaintiff was that the side track was to become the property of plaintiff, neither the mortgagee nor the purchaser upon the foreclosure of the mortgage acquired any lien thereon or title thereto. The court instructed the jury very fully and fairly upon this point, and said to the jury:

"It is for you to say whether the side track belonged by that contract to plaintiff or to the railroad company, and in determining that question you will consider the evidence in the case as to what the contract was when originally made. I think it is also proper for you to consider the testimony in the case relating to the custom generally as to the question of ownership of side tracks when constructed by railroad companies for the convenience of mill-owners or manufacturers. That testimony was opened upon the part of the defendant in the case, and that testimony was subsequently put in by the plaintiff's counsel, and I think it is proper for you to consider it in connection with the evidence relating to what the real contract was, which, I believe, was reduced to writing and lost. If, on consideration of this evidence,—all the facts and circumstances of the case as shown by the evidence,—you find that the railroad company under that contract was the owner of the side track, that the title did not pass to plaintiff, then your verdict will be for the defendant. If, on the contrary, you find that the plaintiff became the owner of that side track by virtue of that contract, he is entitled to recover, and his measure of damages will be whatsoever you find was the value of the iron that was taken up and removed by the defendant and converted to its own use, on the 4th day of December, 1881, with interest thereon to the present day at 6 per cent."

There was no error in this charge. The jury found a verdict for the value of the iron, with interest, and that finding involved the further finding that the side track was to become, and did become at the time of its construction, the property of the plaintiff, and the mortgage did not attach.

The judgment below is affirmed, without costs to either party.

The other Justices concurred.