## CARD v. FOWLER.

1. APPEAL — EVIDENCE — HEARSAY — INCONSISTENT POSITIONS OF COUNSEL.

Counsel for an appellee cannot insist upon the Supreme Court's rejecting, in order to sustain the verdict, hearsay evidence used by them to obtain the verdict in the court below.

2. CHATTEL MORTGAGES — POSSESSION OF MORTGAGEE — CLAIM OF OWNERSHIP—WAIVER OF LIEN.

One taking possession of personal property, claiming absolute ownership, where in fact his rights are those of a mortgagee, does not thereby waive his mortgage lien.

3. SAME—LIABILITY IN TROVER—NECESSITY FOR TENDER.

While a chattel mortgagee who sells sufficient of the property to satisfy his lien may be sued by the mortgagor in trover upon his claiming ownership of and refusing to deliver the remainder of the chattels, no tender in such case being necessary, a claim of absolute ownership of chattels exceeding in value the amount of his lien will not of itself subject him to liability in such an action, without a tender of the amount his due being previously made.

4. WITNESSES—WEIGHT OF EVIDENCE—INSTRUCTIONS.

Though courts are properly reluctant to call attention to the testimony of a particular witness, it is desirable to give some instruction on the weight of evidence where there was but one witness to the transaction in controversy, and his evidence is contradicted by a single witness, much of whose testimony is of a hearsay character.

5. EXECUTORS AND ADMINISTRATORS—AUTHORITY TO SUE.

Authority of an administrator to sue in behalf of the estate was recognized, though nearly four years had elapsed since his appointment, where no plea to the jurisdiction was filed, and no showing was made that the estate had been closed or that the administrator had been discharged.

Error to Hillsdale; Lane, J. Submitted April 21, 1899. Decided July 11, 1899.

Trover by David S. Card, administrator of the estate of

Fremont W. Fowler, deceased, against Frederick Fowler. From a judgment for plaintiff, defendant brings error. Reversed.

*Stone & Twiss* (*T. E. Barkworth*, of counsel), for appellant.

*Corvis M. Barre* (*F. A. Lyon* and *Watts, Bean & Smith*, of counsel), for appellee.

HOOKER, J.   Frederick Fowler and Fremont Fowler were father and son; and the record indicates that the son, Fremont, was unsuccessful in business, if not profligate, and that for many years he made heavy draughts upon his father's patience and generosity.   He was in debt to him as well as to others.   He died on February 9, 1891, at his home,—a farm owned by his father.   A short time before his death he procured some money from his father. Eli Rogers, the father's brother-in-law, who was present at the interview, testified that the property in question was purchased by Frederick Fowler for $2,000, which was paid by Rogers at Frederick Fowler's request.   The administrator attempts to dispute this by alleged statements of Frederick Fowler to the effect that decedent's property was sufficient to more than pay his debts, and that, if there was more than enough to pay him, he would pay other creditors; but the briefs of plaintiff's counsel assert that Frederick Fowler always claimed to be absolute owner of the property, and never claimed to be holding it as mortgagee.   A bill of sale was produced, which Rogers said he induced Fremont to give to his father at a time subsequent to the loan, but that Frederick Fowler had nothing to do with that transaction.   The only evidence that tended to controvert the testimony of Eli Rogers was given by Kate Fowler, Fremont's widow, upon cross-examination.   She was called by the plaintiff to prove that the defendant took the property from the farm after Fremont's death.   Upon cross-examination she said:

"I knew at the time he was making this disposition of

this property that he was claiming that he was doing it in accordance with a claim that he had purchased it from my husband. * * * I knew in the fall of 1890 that my husband was in debt. I knew that he got some money from his father during the winter. I knew that he got $1,200. I knew that he got it, by his telling, and by Eli Rogers. * * * I knew my husband made a list of property for the purpose of obtaining the money. I wrote it down myself as he told it to me. * * * I knew Mont. was going to get the money from his father, and I knew he did obtain it. My husband told me that he got the $1,200, and gave a mortgage."

She also testified that she knew where most of the money was paid out by her husband.

The principal question in the case was whether the defendant purchased the property, or took a mortgage upon it for $1,200 or more. It was left to the jury, and it is manifest that they found that the defendant did not purchase the property; for, if they had not, their verdict could not have been in favor of the plaintiff. The claim is made by the counsel for the plaintiff that we should say that there was no evidence tending to show that the defendant had a lien upon the property, and that his defense necessarily rested upon his alleged purchase. That there was a transaction of some sort, there is no room to doubt; and if, as is now claimed by plaintiff's counsel, the testimony of Kate Fowler was hearsay, and should not be considered for that reason, and for the further reason that she should not have been allowed to testify against her husband's administrator, by reason of her being disqualified to testify against the husband without his consent, there would seem to be little, if any, testimony contradicting the defendant's proof. The contention that we should disregard this testimony does not impress us favorably, for it places the plaintiff in the position of using it to obtain a verdict, and insisting upon disregarding it to sustain the verdict. We must say, therefore, that it was proper to submit the question to the jury, and that it conclusively appeared in the case that the defendant had a lien upon

some or all of this property, his claim of ownership having been denied by the jury.

The court was requested to instruct the jury to render a verdict for the defendant. This was upon the theory that, whether he was owner or mortgagee, he had a right to the possession of the property. The court instructed the jury as follows:

"The contention of the plaintiff is that it was a mort-gage for $1,200 only, and, if you find that it was a mort-gage for that amount only, then I think the defendant would have a right, even though it were not for such an amount as equaled the value of the property, to take possession of the property, under the evidence in this case, and that his possession would not be wrongful, unless he went so far as to deny the right of the estate in that property; and, if he did go so far, notwithstanding he had a mortgage upon the property, as to say or to insist that there was no right left in Fremont W. Fowler, that he had no rights in the property, that his personal representa-tive, the administrator, had no right in the property,— was insisting that he was the owner of it entirely,— then there would be a right of recovery here in the adminis-trator for so much as the value of this property which he was insisting he owned was in excess of the lien which he actually had upon it. And, in determining the amount of that lien, you would figure the interest upon it from the time when it was given up to the present time, at 6 per cent."

It was contended by the plaintiff that the defendant had sold sufficient property to more than pay his claim, and that, therefore, no tender before suit was necessary. If the defendant had sold sufficient to pay his claim, the lien was discharged, and there was no occasion to make a tender; and upon a refusal to deliver the remainder, accompanied by a claim of ownership, trover would lie. In the case of *Brink* v. *Freoff*, 40 Mich. 613, 44 Mich. 69, trover was sustained where, an installment being over-due, more than sufficient property was sold to pay it. *Iler* v. *Baker*, 82 Mich. 226. But in the present case the de-fendant claimed that the mortgage was not paid by a sale

of the property, and that, until it was paid or tendered, he had a right to the possession, and the court so instructed the jury. Had he stopped there, the defendant would have no cause for complaint; but he did not. They were told further that if, under such circumstances, the defendant claimed to hold as owner, and denied that the plaintiff had any title whatever, there would be a right of recovery for the excess over and above the amount necessary to pay up the mortgage. Counsel for the defendant contend that until the defendant's mortgage was paid or tendered, or he had, through sale of the property, realized sufficient to pay his claim, he had a right to retain the possession; and this seems plain enough, unless, as counsel for the plaintiff contend, his claim of absolute ownership and denial of plaintiff's title deprive him of such right. Plaintiff's counsel assert that such claim should be treated as a waiver of the lien; but we think otherwise. In the cases of *Rall* v. *Cook*, 77 Mich. 681, and *Iler* v. *Baker*, 82 Mich. 230, the right of the mortgagee to receive the amount due him was recognized, notwithstanding such a claim. In the latter case, at least, the claim was made upon the trial, and the question went to the jury, as it did in this case. There is much in this record that tends to support the claim of the defendant, and, though the issue was found against him, if made in good faith, it would be rather severe to require him to lose his entire debt because he had not succeeded in establishing the identical claim made. As we have seen from the cases cited, such a penalty was not imposed in other cases. If the lien was not lost by such claim, it would seem to follow that he had a right to enforce it by taking possession of and selling the property; and, if so, it is hardly consistent to say that an immediate right of replevin or to recover in trover arises because of the claim of ownership.

In *Brink* v. *Freoff*, *supra*, it was held that trover would lie for a wrongful sale of the property, and that a tender was unnecessary, because the sale had put it out of the power of the mortgagee to return the property wrongfully sold. In

*Rall* v. *Cook, supra*, it was said a tender was unnecessary. That case is thought to support plaintiff's theory, and it is said that the property had not been sold, yet the court sustained the action, and held that a tender was unnecessary. It is true that the report fails to show that the property was sold, but the record discloses that the action was brought some four years after the demand, which, taken in connection with the statement in the opinion that "I think the tender would be unimportant, as is pointed out in *Brink* v. *Freoff, supra*," would indicate that it had been sold. In that case the statement that a tender was unnecessary was put upon the express ground that, by reason of a sale of the property, it could not be complied with. Again, in *Rall* v. *Cook* the court used this language:

"He knew then that the bill of sale afforded no protection to Cook, but he also knew that Cook had valid liens upon the property, placed thereon by his own act, and that Cook had the right to retain possession under them; and it was as much his duty to make a tender in one case as in the other."

This would indicate that the right to possession was not lost, and that the duty to make a tender would have existed, had it not become unimportant for the reason mentioned. But the matter was set at rest in a later case, written by the same distinguished judge, from which we may infer still more strongly that the property had been sold in the case of *Rall* v. *Cook*. In *Iler* v. *Baker*, 82 Mich. 230, Mr. Justice CHAMPLIN said:

"His position with reference to the property was that of a pledgee or mortgagee in possession. If the testimony of plaintiff was entitled to credence, then there was an extension of time for the payment of the money due to Mr. Baker. But the time was indefinite; and, had he retained possession of the goods, it would have been necessary for the plaintiff both to have made a tender of the amount due, and to have made a demand for the delivery of the property, before he could maintain an action of trover for its conversion. But Baker, being in

possession as pledgee of the property, as the testimony shows, sold sufficient, and more than sufficient, to pay the debt due to him from Iler, in which case he became bailee for Iler of the remainder of the goods, and also it was his duty to pay over the surplus money realized on the sale, over and above the debt due to him, on request; and in such case neither tender nor demand was necessary before bringing action, where the pledgee asserted absolute title to the goods, and denied all right of property in the pledgor to them."

We are of the opinion that the learned circuit judge was not justified in the instruction that trover would lie for property in the lawful possession of the defendant, which he had a right to retain for the satisfaction of his lien. Had a tender of any balance due him been made, the case would be different. Under this instruction the jury may have found for the plaintiff, notwithstanding the possible fact that the mortgage was not fully paid.

Allusion has been made to the character of the testimony in support of the claim that the transaction amounted to a mortgage. The testimony of Rogers clearly showed that the property was purchased by the defendant. There was no other witness to the transaction, and the contrary was made to appear, if at all, by testimony of doubtful admissibility, in the main, because much of it was hearsay. A perusal of the record satisfies us that this was one of the cases where some instruction upon the weight of evidence would have been proper. Counsel presented the following requests:

"4. You are instructed that the uncontroverted testimony of a credible witness ought not to be lightly disregarded, and you have no right to substitute a fanciful hypothesis to account for facts which are explained by direct testimony. Your verdict should be based on the evidence, and that alone; and it is the duty of the jury to harmonize all proven facts, if possible, with the conditions found surrounding the case, and the circumstances proven to have existed at the time of the occurrence."

"6. If the jury believe the testimony of Eli B. Rogers, there can be no further inquiry. The defendant is entitled to a verdict upon that finding."

Judges are properly reluctant to call attention to the testimony of particular witnesses, and doubtless in this instance the trial judge thought the subject sufficiently covered by the charge.    We think, however, that it would have been better to have given the fourth request, if not the sixth.

. It is contended, further, that the administrator had no authority to commence this action, because nearly four years had elapsed after his appointment.    There was no plea to the jurisdiction; nor any showing that the estate had been closed, or that the administrator had been discharged.    We have recognized the necessity for the extension of the authority of executors and administrators for a period longer than the statutory one, and their acts at a later date have often been sustained.    *Larzelere* v. *Starkweather,* 38 Mich. 96; *Church* v. *Holcomb,* ·45 Mich. 37; *Norman* v. *Olney,* 64 Mich. 561; *In re Beniteau,* 88 Mich. 154.

There are other points raised, but, as most of them pertain to the admissibility of testimony of witnesses and the conduct of counsel, we do not discuss them.    They raise questions which are governed by rules which should be well understood.

The judgment is reversed, and a new trial ordered.

The other Justices concurred. ·