## HAUTALA v. DOVER.

1. SALES—PRICE—TROVER—CONTRACTS—PAYMENT—EVIDENCE.
   In an action for the conversion of an automatic piano, which plaintiff purchased of defendant on the installment plan, claiming to have paid the entire purchase price, which defendant contended included interest and $50 more than plaintiff's testimony tended to show, it was a question for the jury whether plaintiff's contention was true as to the terms of the agreement which, it was undisputed, were modified at the time of delivery of the piano, and the court did not err in submitting it, though there was a writing which evidenced the original transaction.

2. DAMAGES—VALUE.

The measure of damages, in trover, is the true cash value at the time and place of conversion, in the absence of testimony showing that the goods had a peculiar value to the owner.

3. SAME—VERDICT—VALUE.

Upon defendant's testimony, uncontradicted, that the property converted was worth $300 at the time of conversion, four years after it had been purchased, and after it had had considerable usage, a verdict for $527.80 was without basis, and should have been set aside.

Error to Houghton; O'Brien, J. Submitted June 6, 1913. (Docket No. 42.) Decided July 9, 1913.

Trover by Matt Hautala against Charles Dover for the conversion of an electric automatic piano. Judgment for plaintiff. Defendant brings error. Reversed.

*Burritt & Burritt,* for appellant.

*A. W. Kerr,* for appellee.

STEERE, C. J. This is an action of trover in which plaintiff recovered, in the circuit court for the county of Houghton, a verdict and judgment for $527.80 as the value of an automatic piano previously bought by him on contract from defendant, and later taken into possession by defendant under a writ of replevin issued from justice's court, under the claim that there were $50 principal and about $45 interest yet due and unpaid upon the instrument. The replevin suit was dismissed by the justice on November 8, 1911, for want of jurisdiction. The record does not disclose that plaintiff asked any judgment for return of the property replevied, and no such judgment was entered, but on November 15, 1911, he commenced this action in trover.

Plaintiff claims that at the time said property was

replevied he was absolute owner of the same and had fully paid for it according to his contract of purchase. Defendant claims that there was then due upon the contract the amount already stated, and that at the time of the trial of this suit the sum of $95.47 as a balance of principal and interest was past due and unpaid; that by the terms of said contract the title and right of possession did not vest in the plaintiff until the property was fully paid for. Plaintiff filed the ordinary declaration in trover, describing the property, and claiming damages of $2,000. Defendant pleaded the general issue and gave special notice of a written contract entered into between the parties, claiming thereunder that payments were past due and unpaid thereon, and that he therefore yet held the legal title and right of possession.

It is undisputed that plaintiff bought this piano from defendant, who delivered it to him on December 8, 1908, at plaintiff's saloon in the city of Houghton; that he then and there signed a written contract for the same and made a payment, the amount of which is in dispute, and was then given a receipt by defendant for $120; that he has since made payments and taken receipts therefor, entitling him to a credit on said written contract of $800.

The contract, which was admitted in evidence, is dated December 8, 1908, and is for a purchase of the automatic piano in question at the price of $850, $120 paid down, $30 on December 15th, $40 on January 20th following, and $40 each month thereafter until full payment is made, with interest at the rate of 6 per cent. per annum until paid. Title and right of possession are reserved in Charles Dover, the defendant, until full payment is made. The right is given defendant to retake possession in case of attempt to incumber, dispose of, or remove said piano from the county of Houghton, or if default is made in pay-

ments as specified, and in such case the moneys already paid are to become stipulated damages for nonfulfillment of the contract, loss in value, and for use or rental while in plaintiff's possession. Plaintiff admits signing this contract, but repudiates it, claiming that he supposed it was a receipt for the piano, which he had previously bought by an oral agreement from defendant's agent for $800, and on which he then paid $20 down, agreeing to pay $25 on delivery and $25 per month thereafter until the $800 was paid, without interest.

The disagreement resulting in this litigation arose over the amount paid and the interest. Plaintiff testified that he paid $100 when delivery was made, the $20 previously paid being added to his receipt to make the $120 for which it was given, and that he agreed to pay $40 per month thereafter. The receipts he produced total $800.

Defendant claimed but $750 had been paid and that $50 was credited as a rebate on the contract price. His explanation is as follows:

"We gave him a discount of $50, and $20 that Mr. Maliniemi had collected. * * * The order was brought in to me for $850, $100 down and $25 a month. When we came to close up the deal with Mr. Hautala, he wanted to get it cheaper, so we finally agreed that if he would pay $40 a month, pay $100 down and $40 a month, I would throw off the $50, and so he said that, but the price of the piano was $850. I had sold 14 of them at that price, and I was bound not to sell for anything less. * * * I haven't any right to sell for anything less than $850. and it had to show on my contract $850."

Defendant was a piano dealer and had been in the business since 1898. He had a store in Hancock and amongst other instruments sold nickel-in-the-slot or automatic, electric pianos, which were new at that

176 MICH.—24.

time and in demand for use in saloons and other public places.

Maliniemi, a Finlander, who acted as his agent amongst Finnish people, took an order from plaintiff, who was a Finnish saloon, keeper, for one of these pianos. He testified that the price was $850 and. $25 per month until paid for. Plaintiff claims it was $800 without interest; no written order was given. It was reported to defendant by the agent at $850 and $25 per month. Just what the understanding was between plaintiff and the agent is in our view immaterial, because according to the testimony of all parties, including plaintiff himself, there was a readjustment and a different agreement made when the piano was delivered and the deal closed. He got the piano for $800, which he claims was the original price with the agent, but the terms of payment were changed; the initial and subsequent payments being materially increased. Their conflicting testimony presents an issue of fact relative to the amount paid to the extent of $50 and as to interest on deferred payments.

Plaintiff, while admitting his signature to the contract, testified that he did not know it was a contract but supposed he was signing a receipt for the piano, and therefore did not ask any questions as to its contents, and could not read it over, being unable to read English and speaking English but imperfectly. He had been in the saloon business in this country for over 16 years, and it is ·claimed that he could understand and speak English fairly well when talking about ordinary matters. His ability in this particular is a matter in dispute, as is also the question of whether or not the contract was read and explained to him. Defendant and Maliniemi, who signed as a witness, testified that it was. Plaintiff testified that it was not, and that, according to the agreement as

made and understood by him, no interest was to be paid.

All parties concede, and defendant testified, that there was an oral agreement for a different price than that stated in the contract. Defendant calls it a rebate. Under the testimony given and undisputed facts shown, we think that the door was open for oral testimony as to just what the agreed price was and whether it was with or without interest. If it was without interest and plaintiff has paid the full $800, he is entitled to recover from defendants the value of the piano at the time and place of conversion. If he has only paid $750, or if it was not understood and agreed that there should be no interest, he cannot recover.

Irrespective or the foregoing questions, the verdict and judgment herein cannot be sustained. The measure of damages in a trover case is the true cash value of the property converted at the time and place of conversion, in the absence of any testimony showing a peculiar value in the goods to the owner, and there is no such testimony in this case. *Tuttle* v. *White*, 46 Mich. 485 (9 N. W. 528, 41 Am. Rep. 175); *Iler* v. *Baker*, 82 Mich. 226 (46 N. W. 377); *Spoon* v. *Railway Co.*, 86 Mich. 309 (49 N. W. 35).

The verdict and judgment in this case were for $527.80. There was no testimony introduced upon which to base such a verdict. Plaintiff introduced no testimony, before he rested, as to the value of the piano, except that he paid $800 for it in 1908 on a contract with deferred payments and without interest. The only testimony as to value, at the time and place of the alleged conversion, is that of defendant, a piano dealer with many years' experience in the business. He was cross-examined and re-examined on the subject, testifying, in part, as follows:

"It has been in use nearly four years. Its fair

market value would be about $300. Its value today as compared with when I first took it back, is just the same. It hasn't been opened; everything stood right in the store there; never been played or anything of the kind. Never has been opened to take the nickels out. Mr. Hautala has the key. I merely took it to my store and have had it there ever since, ready to deliver at any time he pays the balance. * * * You see it is different with an electric piano than a family piano because it is played so much more; that increases the wear and tear. You play an electric piano ten times as much as you play an ordinary piano. * * * It was nickel-in-the-slot piano used in the saloon. There is a big difference in the market for these electric pianos today than in 1908. They were new then and would take in a lot of money. Now everybody has got used to them and they don't play them near as much. The market for them today is not what it was four years ago in this community."

This was the only competent testimony in the case of the true value of the property at the time and place of conversion.

Judgment is reversed, and a new trial granted.

MOORE, McALVAY, BROOKE, KUHN STONE, OSTRANDER, and BIRD, JJ., concurred.