MAYCROFT v. THE JENNINGS FARMS.

1. CONVERSION—TROVER—RULE OF DAMAGES.

While the technical action of trover has been abolished in this State by the judicature act (3 Comp. Laws 1915, § 12350), the action of trespass on the case for the unlawful conversion of personal property is retained, and the rule of damages in such cases has not been changed, which is the true cash value of the property converted at the time and place of conversion, in the absence of any testimony showing a peculiar value in the goods to the owner.

2. SAME—SPECIAL DAMAGES—EVIDENCE—SUFFICIENCY.

In an action for the unlawful conversion of certain mortgaged personal property, consisting of two horses, two cows, one stump machine, and one double harness, by the foreclosure and sale thereof before the maturity of the chattel mortgage, the trial court was in error in submitting to the jury the question of damages suffered by reason of loss of possession of said property, the special damages claimed not being the proximate or natural result of the act of defendant, and the testimony being too speculative and conjectural upon which to base a verdict.

Error to Muskegon; Vanderwerp (John), J. Submitted January 20, 1920. (Docket No. 91.) Decided February 27, 1920.

Case by Charles Maycroft and another against The Jennings Farms for the unlawful conversion of certain mortgaged personal property. Judgment for plaintiffs. Defendant brings error. Affirmed, conditionally.

*William J. Branstrom* and *Charles B. Cross*, for appellant.

*R. J. Macdonald* (*D. A. Macdonald*, of counsel), for appellees.

STONE, J. Plaintiffs brought this action to recover damages for the alleged unlawful conversion of certain mortgaged personal property, consisting of 2 horses, 2 cows, 1 stump machine, and 1 double harness, by the foreclosure and sale thereof by defendant before the maturity of the chattel mortgage. The mortgage bore date March 3, 1916, and was due December 31, 1916. It appeared that on or about June 23, 1916, the defendant took possession of the property covered by the mortgage, and after advertising it for sale under the mortgage, sold the same on June 29, 1916, against the protest of the plaintiffs.

There was a claim by defendant of a new arrangement and agreement between the parties, which in our view of the case it is not important to here state, as the question was submitted to the jury, and they found against the defendant's claim. Upon the trial, plaintiffs were permitted to amend their declaration by adding the following allegation for special damages:

"That the plaintiffs by leave of the court, hereby amend their declaration by adding a new count for special damages which the plaintiffs suffered by and through the unlawful seizure and conversion of the goods, chattels and personal property in the chattel mortgage of the plaintiffs, hereinbefore described, which were sold and converted illegally and unlawfully in the pretended foreclosure proceedings upon said mortgage June the twenty-ninth, 1916, whereby the use and enjoyment, earnings and returns of the two horses, their harness and wagon and two milk cows were diverted from the plaintiffs and were wholly lost to them, to their damage five hundred dollars."

The aggregate value of the property claimed to have been sold and converted by defendant was $525.00. It was admitted by plaintiffs, and the court so instructed the jury, that at the time of the sale plaintiffs were owing defendant upon said mortgage $125 of principal and $2.55 interest, although the indebted-

ness was not then due.  The difference between the actual value of the property alleged to have been converted and the amount conceded to have been owing upon the mortgage at the time of such alleged conversion was $397.45.

Upon the trial the plaintiff Charles Maycroft was permitted to testify notwithstanding the objection of defendant as follows:

"*Q.* What damage did you sustain aside from the loss of the value of this property in that sale by the taking of this property and the selling of it by this defendant?  * * *

"*A.* Taking the team away from me, I had nothing left to work with but my hands, where if I had had the team I could have been working with them, earning something with the team of horses myself, besides being deprived of the use of the cows.  The family had to go without the use of my cows, the milk and butter and so on.

"*Q.* What was this team worth to you per day in your business?

"*A.* They were worth at least a dollar and a half a day over and above their keeping.

"*Q.* Would that be a reasonable price?

"*A.* I think it would.

"*Q.* And what were your cows worth to you per day?

"*A.* Besides what butter and milk we had used for the month before they took them we were selling about four dollars worth of butter a week."

The case was submitted to the jury, and they were charged as follows:

"If you come to the question of damages you should consider all the testimony in the case as to the condition and value of the property taken at the time of such taking, and also all of the testimony as to what damage the plaintiffs suffered by reason of the loss of possession of such mortgaged property taken from their possession by the defendant's agents, from the time it was taken up to December 31, 1916, when the mortgage became due, and from such testimony de-

termine what amount plaintiffs are entitled to, if any, under the instructions I have given you."

The jury awarded the plaintiffs $773.45 damages, and judgment was entered accordingly. Adding the $127.55 due upon the mortgage, which had been deducted by the jury, would make the entire sum allowed for damages $901.

The defendant has brought the case here by writ of error. The assignments of error relied upon by appellant are:

(1) Error in refusing to direct a verdict for defendant.
(2) Error in the admission of evidence and in the charge of the court upon the subject of damages.

1. We do not agree with appellant upon the first point, and overrule the same without discussion.

2. The second point raises the interesting question whether or not the plaintiffs' measure of damages should have been limited to the value of the property alleged to have been converted, at the time and place of such conversion, with interest thereon. While the technical action of trover has been abolished in this State, see section 1, chap. 11, judicature act (3 Comp. Laws 1915, § 12350), the action of trespass on the case for the unlawful conversion of personal property is retained, and the rule of damages in such cases has not been changed. The general rule in this State was recently stated by Chief Justice STEERE, speaking for the court, in *Hautala* v. *Dover*, 176 Mich. at page 371, as follows:

"The measure of damages in a trover case is the true cash value of the property converted at the time and place of conversion, in the absence of any testimony showing a peculiar value in the goods to the owner. * * * *Tuttle* v. *White*, 46 Mich. 485 (41 Am. Rep. 175); *Iler* v. *Baker*, 82 Mich. 226; *Spoon* v. *Railway Co.*, 86 Mich. 309."

For a reference to earlier Michigan cases see note 2, appended to *Dalton* v. *Laudahn,* 27 Mich. 529. That the decisions in other jurisdictions differ is evident from the language of text-writers. Reference to 38 Cyc. p. 2100 will disclose the following:

"It is proper to award as damages not only the value of the property converted, but also compensation for the wrongful detention thereof, such compensation being either interest on the value, or a greater sum if interest will not fully compensate the owner."

Many cases are cited, some of which, in our opinion, do not sustain the text.

A reference to 28 Am. & Eng. Enc. Law (2d Ed.), p. 734, will show the following language:

"Where the plaintiff demands judgment for the value of the chattels converted and detained by the defendant, he is not entitled also, to the value of the use of the chattels while detained by the defendant."

A number of cases are there cited, including *Blais-dell* v. *Scally,* 84 Mich. 149. The rule recognized in the *Blaisdell Case* would seem to settle the question in Michigan, as contended by defendant. We have examined a score of cases in other jurisdictions. The great weight of authority is to the effect stated in the 28th volume of American & English Encyclopedia of Law in the above reference. Upon this subject there is an extended note in L. R. A. 1915B, at page 291. The note is to the case of *Martinez* v. *Vigil,* 19 N. M. 306 (142 Pac. 920). The headnote of the case is that ordinarily, and except in special circumstances, not present in that case, the measure of damages for the conversion of personal property is the value of the property, at the time and place of conversion, and interest. There the action was for damages for the conversion of certain sheep, cattle and horses which were conveyed by a certain bill of sale. The appellant complained of the rule as to the measure of damages

which was submitted to the jury, which was as follows:

"In fixing the amount of said damages, you should take into consideration the reasonable value of said property at the time it was taken, and also the reasonable value of its use from that time until now, and allow plaintiff such a sum as, in the exercise of sound discretion, you may believe, from all the facts and circumstances in evidence, will be a fair and just compensation for the taking and detention of said property."

After stating that this instruction was clearly erroneous, the court said:

"Conversion of personal property amounts to an attempt, on the part of the person doing the act, to wrongfully transfer the title to himself. The bringing of an action of trover amounts to an action on the part of the owner to ratify that which was before illegal, and to make it legal. The title then passes completely as of the date of the illegal taking. Hence the rule that the measure of damages for conversion is the value of the property at the time of conversion, with interest. 2 Sedgwick on Damages (9th Ed.), § 493; 4 Sutherland Damages (3d Ed.), § 1109; 13 Cyc. p. 170; *Cunningham* v. *Sugar*, 9 N. M. 105 (49 Pac. 910). When, however, the property is returned to the owner, either voluntarily, or at his suit, or by purchase by him, an entirely different principle intervenes. In that case compensation to him would be measured, not by the value of the property attempted to be converted, but by the deterioration in value, if any, between the time of the illegal taking and the return to the owner, the reasonable value of its use, if it was of such a character as to be valuable for use, during the period of detention, costs and expenses in recovering the same, and perhaps other items in special circumstances. In this way the injured owner would be fully compensated, and this is always the object of the law."

"The two principles above stated are necessarily antagonistic and can have no concurrent application in any given case. If an owner elects to ratify a con-

version of his property, and thus effect a transfer of the title thereon to the trespasser, he no longer owns the property, has no right to its use, and is damaged only to the extent. of. its value, and interest. If, on the other hand, he disavows the attempted conversion and recovers the property, it was his property all the time, and he may recover for the loss of its use, if valuable for use, during the time of its detention. He cannot have both the value of the property at the time of the conversion and the value of its use. This would seem to be clear on reason, and is supported by authority."

The court then reviews numerous cases in support of its position, to which we invite attention. The author of the note referred to says:

"Practically all the courts seem to be in harmony with *Martinez* v. *Vigil*, in holding as a general proposition, that the value of the use of the converted property is not recoverable as damages, in an action for conversion. *Tatum* v. *Manning*, 9 Ala. 144 (use of slave) ; *McGowan* v. *Lynch*, 151 Ala. 458, 44 South. 573 (use of mare) ; *Blaisdell* v. *Scally*, 84 Mich. 149 (use of piano in continuing musical education) ; *Hinds* v. *Terry*, Walk. (Miss.) 80 (use of slave) ; *Funk* v. *Dillon*, 21 Mo. 294 (services of slave) ; *Dakin* v. *Elmore*, 127 App. Div. 457, 111 N. Y. Supp. 519 (use of flue rollers, swedge, and caulking tools) ; *Hofreiter* v. *Schwabland*, 72 Wash. 314, 130 Pac. 364 (use of house) ; *Polk's Adm'r* v. *Allen*, 19 Mo. 467 (hire of slave).

"The rule is based upon the fiction that the owner parts with his title at the time of the conversion, and that the measure of damages should, therefore, be the value of the property at the time of conversion, with interest thereon."

We might pursue this reference to authorities, but it seems unnecessary to do so. We might add in passing that there is nothing in the instant case in any view to warrant the application of the rule contended for by the plaintiffs. The special damages claimed

were not the proximate or natural result of the act of the defendant. The testimony was too speculative and conjectural to base a verdict upon. We are of the opinion that the trial court erred in its instruction above set forth, and that such error was prejudicial. It is very clear that the plaintiffs sustained no more damages by conversion of their property by defendant under a premature foreclosure sale than they would have sustained had the conversion been by an utter stranger. In either case the plaintiffs lose their property at the time of its conversion.

If the plaintiffs shall within 30 days after the filing of this opinion remit of said judgment all damages in excess of $397.45 the judgment below thus amended will be affirmed with costs of this court to appellant; otherwise the judgment below will be reversed, and a new trial granted, with costs to the appellant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.