# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES MAGLEY III,

Plaintiff-Appellant,

v

M & W INCORPORATED,

Defendant-Appellant.

FOR PUBLICATION
July 17, 2018
9:15 a.m.

No. 340507
St. Joseph Circuit Court
LC No. 16-001080-NZ

Before: HOEKSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

In this tort case arising from the repossession of farm equipment, plaintiff appeals as of right the order granting summary disposition to defendant under MCR 2.116(C)(10). Because the trial court erred by concluding that defendant could not be held liable when acting as an agent for a third-party, and material questions of fact remain regarding the wrongfulness of defendant's conduct, we reverse the grant of summary disposition to defendant and remand for further proceedings.

Plaintiff is a farmer and the owner of a John Deere tractor. Plaintiff had a loan with Kellogg Community Credit Union ("Kellogg") relating to the tractor, and under the terms of plaintiff's "Loan and Security Agreement" with Kellogg, the tractor was secured collateral, subject to repossession and sale in the event that plaintiff defaulted on his loan. Defendant is an "asset recovery" company that repossesses property and sells it on behalf of lienholders. Plaintiff defaulted on his tractor loan, and on June 28, 2016, acting on Kellogg's behalf, defendant repossessed plaintiff's tractor. Notably, when defendant repossessed the tractor, it also took other farm equipment, specifically a "front-mounted tank" and a "sprayer," both of which plaintiff had recently attached to the tractor in preparation for his annual herbicide spraying of his crops. Unlike the tractor itself, plaintiff owned the sprayer and tank outright, and these items were not mentioned in the loan documents. Despite plaintiff's demands for the return of his property, defendant kept plaintiff's items for approximately one month and posted pictures of the tractor—with the sprayer and tank attached—on Facebook as a featured item in an upcoming auction. After plaintiff resolved his loan dispute with Kellogg, defendant eventually

-1-

released plaintiff's tractor, sprayer, and tank to him.[1]  However, by the time the property was released, plaintiff had been deprived of the use of his equipment for a month, he had to pay someone else to spray his crops, and he had suffered damages to his crops because he missed the "most opportune time" for spraying his crops.

Plaintiff filed the current lawsuit against defendant, alleging:  (1) common law conversion, (2) statutory conversion, (3) trespass to chattels, and (4) negligence.  Briefly stated, plaintiff alleged that defendant wrongfully repossessed the sprayer and the tank, that defendant wrongfully withheld those items from him, and that defendant wrongfully posted the items for auction, despite plaintiff's demands for the return of his farm equipment.  Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that it acted lawfully when repossessing the tank and sprayer and that, if there was any wrongdoing, defendant could not be held liable while acting on Kellogg's behalf based on information provided by Kellogg.  The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10), stating that it agreed with defendant's position.  Plaintiff now appeals as of right.

On appeal, plaintiff argues that the trial court erred by concluding that defendant could not be held liable for wrongful conduct while acting on Kellogg's behalf to repossess property.  Additionally, plaintiff argues that the tank and sprayer were not subject to repossession because these items do not qualify as "accessions" within the meaning of the Loan and Security Agreement.  Plaintiff acknowledges that, under the Loan and Security Agreement, attached items, even if not accessions, may be taken incidentally to repossession of secured property; but, plaintiff argues that defendant's conduct in this case was nevertheless wrongful because defendant made no attempt to return plaintiff's items and refused plaintiff's demands for the return of his property.  We agree.

We review de novo a trial court's decision to grant a motion for summary disposition.  *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).  "When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact."  *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 427; 760 NW2d 878 (2008).  "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party."  *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).  To this extent this case involves questions concerning the interpretation of a contract or a statute, our review is de novo.  *Rodgers v JPMorgan Chase Bank NA*, 315 Mich App 301, 307; 890 NW2d 381 (2016).

---

[1] In addition to the tractor, plaintiff also had a loan with Kellogg for a Ford F-350 truck.  The truck was also repossessed by defendant and eventually returned to plaintiff.  However, the repossession of the truck is not at issue on appeal.

The first issue on appeal is whether defendant may be held liable when repossessing property on behalf of Kellogg based on information provided by Kellogg.[2]  "Agency in its broadest sense includes every relation in which one person acts for or represents another by his authority."  *Saums v Parfet*, 270 Mich 165, 171; 258 NW 235 (1935) (quotation marks and citation omitted).  Generally, an agent may be held personally liable for his or her own tortious conduct, even when acting on behalf of a principal.  See *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 17-18 & n 39; 779 NW2d 237 (2010).  More fully, our Supreme Court has quoted with approval from 2 Restatement Agency, 3d, stating:

> An agent is subject to liability to a third party harmed by the agent's tortious conduct.  Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.  [*Appletree Mktg, LLC*, 485 Mich 1, 17-18 & n 39, quoting 2 Restatement Agency, 3d, § 7.01, p 115.]

However, under this rule, an agent is only liable for his or her own "tortious conduct" and cannot be held liable for torts committed by "the agent's principle that do not implicate the agent's conduct."  2 Restatement Agency, 3d, § 7.01, comment d.

Notably, with regard to the tort of conversion in particular, a defendant who wrongfully exerts dominion over property is not shielded from liability on the basis that the action was undertaken in good faith on behalf of a third-party.  "Conversion, both at common law and under the statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 303 Mich App 441, 447; 844 NW2d 727 (2013) (quotation marks and citation omitted).[3]  Conversion is "an intentional tort in the sense that the converter's

---

[2] On appeal, defendant asserts that the trial court's agency ruling was quite narrow—i.e., that the trial court only held that defendant could not be held liable for prematurely taking plaintiff's property insofar as the property was taken on June 28th despite the fact that plaintiff had until June 30th to bring his loan current.  However, the trial court more broadly stated that because defendant was an agent acting under Kellogg's orders, only Kellogg could be held liable for "*any* claims for the wrongful conversion or the premature repossession." (emphasis added.)  Given this statement, although the trial court's reasoning is not entirely clear, it appears that the trial court intended for this agency rationale to apply to the premature repossession and "any" other claims of wrongful conversion.  Plaintiff does not raise the premature repossession issue on appeal.

[3] Treble damages for statutory conversion are available under MCL 600.2919a(1)(a), but, in addition to the common-law elements for conversion, a plaintiff claiming statutory conversion must show that the conversion was for the defendant's "own use."  *Aroma Wines & Equip, Inc v Columbian Distribution Services, Inc*, 497 Mich 337, 356; 871 NW2d 136 (2015).  "[S]omeone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose."  *Id*. at 359.

actions are willful." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). However, conversion "can be committed unwittingly if [the defendant is] unaware of the plaintiff's outstanding property interest." *Id*. See also *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004). Good faith, mistake, and ignorance are not defenses to a claim of conversion. See *Moore v Andrews*, 203 Mich 219, 233; 168 NW 1037 (1918); *Willis v Ed Hudson Towing, Inc*, 109 Mich App 344, 349; 311 NW2d 776 (1981); see also 90 CJS Trover and Conversion § 31. Thus, for example, under the common law, when "an auctioneer receives and takes the property into his possession" from a third-party, "and sells it, paying over the proceeds, less his commission, he is liable, although he has no knowledge or want of title in the party for whom he sells, and acts in good faith." *Kearney v Clutton*, 101 Mich 106, 111-112; 59 NW 419 (1894). Likewise, in the absence of governmental immunity, a sheriff or court officer is liable for conversion for unlawfully seizing personal property, "even if he or she does so in the execution of a court order." *Aroma Wines & Equip, Inc* 497 Mich at 352-353, 359. As one Court succinctly explained: "It is not a defense to say, 'I supposed I had authority to do so.' " *Kenney v Ranney*, 96 Mich 617, 618; 55 NW 982 (1893). Instead, a defendant's actions in reliance on the asserted rights of a third-party are only lawful when the third-party actually has a "legal right" to the property. See *Gibbons v Farwell*, 63 Mich 344, 349; 29 NW 855 (1886).

It follows that in this case, contrary to the trial court's conclusions, defendant may be held liable for its own torts, including conversion, even if acting on Kellogg's behalf. Although defendant purports to have repossessed plaintiff's property in reliance on Kellogg's "Summary of Account" document and repossession request, a mistaken belief that Kellogg had a right to the items is not a defense.[4] *Moore*, 203 Mich at 233; 168 NW 1037 (1918); *Kearney*, 101 Mich at 111-112; *Willis*, 109 Mich at 349. Instead, the question is whether Kellogg truly had a legal right to the property, *Gibbons*, 63 Mich at 349, and it was defendant's obligation to ensure that it exercised only those rights that Kellogg possessed, see *Kenney*, 96 Mich at 618; *Kane v Hutchinson*, 93 Mich 488, 490; 53 NW 624 (1892). If Kellogg did not have a legal right to the sprayer and tank, the fact that defendant acted on Kellogg's behalf is immaterial and thus the existence of an agency relationship did not entitle defendant to summary disposition.

Given that defendant acted on behalf of Kellogg, the issue in this case thus becomes whether Kellogg had a legal right to take, and refuse to return, plaintiff's tank and sprayer. Generally, if a borrower defaults on a loan, a secured creditor may take possession of the collateral. MCL 440.9609(1)(a). However, repossession of property in which a creditor does not have a security interest can constitute conversion. See generally *Larson v Van Horn*, 110 Mich App 369, 379; 313 NW2d 288 (1981). Even if there is a valid security interest in some property, the incidental taking of other property can support a claim for conversion, "*unless* the loan agreement includes the debtor's consent to the incidental taking." *Clark v Auto Recovery Bureau*

---

[4] Even if good faith were a defense to conversion, defendant's reliance on the "Summary of Account" as a basis to justify its actions is nevertheless unavailing because the "Summary of Account" document identifies a "tractor" as the item to be repossessed. It is entirely disingenuous to also blindly seize the sprayer and tank—and to then make no inquiry about the propriety of seizing these items—based solely on the order for the repossession of the "tractor."

*Conn, Inc*, 889 F Supp 543, 548 (D Conn, 1994).[5] See also 46 Causes of Action 2d 513, § 10; *Kane*, 93 Mich at 490 ("It was the duty of the officer to see that no other articles were taken except those described in his writ."). Moreover, a refusal to return property can support a claim for conversion. *Aroma Wines & Equip, Inc*, 497 Mich at 352. If property is eventually returned after a period of wrongful detention, the owner may nevertheless be entitled to damages, including damages for the reasonable value of the property's use during the period of detention. See *Maycroft v Jennings Farms*, 209 Mich 187, 192; 176 NW 545 (1920); *Cent Transp, Inc v Fruehauf Corp*, 139 Mich App 536, 546; 362 NW2d 823 (1984); *Jay Dee Contractors v Fattore Const Co*, 96 Mich App 519, 523; 293 NW2d 620 (1980);18 Am Jur 2d Conversion § 136.

In this case, whether Kellogg had a security interest in the tank and sprayer, and whether plaintiff otherwise agreed to allow Kellogg to take, and retain possession of, the tank and sprayer, are questions of contract interpretation. "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Truth*, 480 Mich 19, 24; 745 NW2d 754 (2008). Contracts must be read as a whole, and words must be considered in context. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 356; 596 NW2d 190 (1999). Courts must "give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). "Inartfully worded or clumsily arranged contract terms do not render a contract ambiguous if it fairly admits of one interpretation." *Village of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244; 911 NW2d 241 (2017). Unambiguous contracts must be enforced as written. *In re Smith Truth*, 480 Mich at 24.

The Loan and Security Agreement between plaintiff and Kellogg contained the following provisions regarding Kellogg's security interest and repossession of property:

> 1. **THE SECURITY FOR THE LOAN** – You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. *Accessions are things which are attached to or installed in the Property now or in the future.* The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancing of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

* * *

---

[5] Although non-binding, authority from other jurisdictions may be considered for its persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

9. **WHAT HAPPENS IF YOU ARE IN DEFAULT** – When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree [Kellogg] has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate, it when you are in default. We will not be responsible for *any other property not covered by this Agreement* that you leave inside the Property or *that is attached to the Property*. We will try to return that property to you or make it available for you to claim. [Italics added.]

In relevant part, the "Security" section of the Truth in Lending Disclosure identifies plaintiff's John Deere tractor as the collateral for the loan. Under the terms of the agreement, after taking possession of "the Property," Kellogg had the power to "sell it and apply the money to any amounts" plaintiff owed Kellogg.

The security agreement does not specifically mention the tank or sprayer. However, both ¶ 1 and ¶ 9 refer to items that are "attached to" "the Property," and in this case the tank and sprayer were attached to the tractor when defendant arrived to repossess the tractor. Significantly, although both ¶ 1 and ¶ 9 use the word "attached," when the contract is read as a whole, it is clear that there are two distinct categories of attached property and that Kellogg's rights with regard to these two categories of attached property are very different. Under ¶ 1, things "attached to" the tractor are accessions subject to a security interest, and these accessions may be lawfully repossessed and sold. See MCL 440.9609(1)(a). However, under ¶ 9 there may be other things "attached to" the secured property that are "not covered by" the Agreement and that are not subject to a security interest. Paragraph 9 makes plain that things attached to the tractor that are not covered by the agreement may be incidentally taken during repossession insofar as Kellogg disavows any responsibility for these items and promises to "try to return that property to [plaintiff] or make it available for [plaintiff] to claim." But, the fact remains that attached property taken incidentally under ¶ 9 is not subject to a security interest, and Kellogg must make a good faith attempt to return it or make it available to plaintiff to claim.[6] When repossessing property on Kellogg's behalf, defendant must abide by these provisions, and adhere to the distinction between ¶ 1 and ¶ 9, because defendant's actions are only lawful to the extent that Kellogg has a legal right to the property being repossessed.

At first glance ¶ 1 and ¶ 9 may seem discordant insofar as they both use the term "attached" to describe two different categories of property. However, these somewhat inartful provisions can be easily harmonized when the contract is read as a whole and the use of the word "attached" is considered in the context of each paragraph. In particular, in ¶ 1 accessions are defined as property "attached to or *installed in* the Property" (emphasis added), while in ¶ 9, the

---

[6] Every contract under the UCC "imposes an obligation of good faith in its performance and enforcement." MCL 440.1304.

"attached" property not covered by the agreement is grouped with property that plaintiff "leave[s] inside the Property." Clearly, ¶ 1 envisions a more permanent attachment, comparable to installing something, while ¶ 9 contemplates a more temporary attachment on par with leaving something inside the property. Stated differently, the "attached" or "installed" items under ¶ 1 essentially become part of "the Property," and thus these accessions are subject to repossession and sale.[7] In contrast, property that is "attached to" or left inside the property under ¶ 9 retains its identity, distinct from the secured property, and it can be readily removed without damaging the secured property; consequently, while this property under ¶ 9 may be incidentally taken during repossession, it must be returned to plaintiff because it is not part of the secured collateral. Fairly read, the parties' agreement evinces an understanding of "accessions" consistent with the general rule that "a good that is affixed to another good so that it is easily removable or completely retains its own identity is not an accession." 9 Anderson UUC, § 9-314:4 (3d ed). See also *Fane v Detroit Library Com'n*, 465 Mich 68, 79; 631 NW2d 678 (2001) (concluding that ramp was not an accession to a building when it could be "readily" removed and had a "possible existence" apart from the building); *Contl Cablevision of Michigan, Inc v Roseville*, 430 Mich 727, 737; 425 NW2d 53 (1988) (finding that term "accessions" "implies a transfer of ownership and control over the property attached"). Whether an item is an accession to property is generally a question of fact. See *Lakeside Resort Corp v Sprague*, 274 Mich 426, 432; 264 NW 851 (1936).

On appeal, defendant attempts to ignore the distinction between accessions and non-accessions. That is, when moving for summary disposition in the trial court, defendant initially argued that the tank and sprayer were accessions. However, at least for the purposes of this appeal, defendant abandons its assertion that the sprayer and tank were accessions, and defendant instead argues that its actions regarding the tank and sprayer were lawful regardless of whether these items fall under ¶ 1 and ¶ 9. Contrary to this argument, if the tank and sprayer are covered by ¶ 9, they are not subject to repossession and sale, and, viewing the evidence in a light most favorable to plaintiff, at a minimum, plaintiff could maintain a conversion claim based on defendant's refusal to return these items.[8]

---

[7] Indeed, upon default, Kellogg has the right to "take possession of *the Property*" (emphasis added), and "the Property" is the "property described in the 'Security' section of the Truth in Lending Disclosure," which in this case is the tractor. The accessions are also properly repossessed because they become part of "the Property" when they are attached to or installed in the tractor.

[8] On appeal, defendant argues that plaintiff may not challenge defendant's post-repossession conduct on appeal—i.e., defendant's refusal to return the items—because plaintiff did not raise the issue in the trial court. Contrary to this argument, in the trial court, plaintiff consistently maintained that the items were not accessions and that defendant's actions, in taking the items, refusing to return them and posting them for sale, constituted conversion. These issues are properly before this Court. Defendant also argues that plaintiff has attempted to improperly expand the record. While it is true that a litigant may not expand the record on appeal, *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002), defendant does not identify

-7-

More specifically, reasonable minds could conclude that the tank and sprayer were not accessions, but separate items with their own identities that could be readily detached without harming the tractor. Indeed, one of the things that is troubling in this case is that defendant disconnected the sprayer from the tractor before transporting the tractor, and yet defendant also loaded the unattached sprayer onto a truck and took it to defendant's place of business. Admittedly, by the time defendant removed the sprayer, the tractor had been driven off plaintiff's property and down the road, and from this it could be concluded that the repossession had already occurred when the sprayer was removed. See *Clark*, 889 F Supp at 547 ("Once a repossession agent has gained sufficient dominion over collateral to control it, the repossession has been completed."). But, even if the sprayer and tank could be taken incidentally to the repossession of the tractor, under ¶ 9, defendant had an obligation to try to return the items or to make the items available for plaintiff to claim. Rather than drive the sprayer to its place of business, defendant could have returned the unattached sprayer to plaintiff's property. On the facts of this case, reasonable minds could conclude that defendant wrongfully exercised dominion over plaintiff's property by taking the sprayer rather than returning it to plaintiff. Moreover, by all accounts, plaintiff contacted defendant on numerous occasions demanding the return of his property, and yet defendant refused to return anything.[9]

Rather than return the items, defendant reattached the sprayer to the tractor and posted a picture of the tractor—with the sprayer and tank attached—as a featured item in an upcoming auction. Only after plaintiff resolved his loan problem with Kellogg did defendant release the sprayer and tank to plaintiff, and by that time, plaintiff had been deprived of the use of the items for about a month. Although defendant emphasizes that the items were eventually returned, this does not bar plaintiff's claims. See *Baxter v Woodward*, 191 Mich 379, 386; 158 NW 137

---

any evidence cited by plaintiff that is not part of lower court record, and we see no merit to defendant's argument.

[9] On appeal, defendant contends that there is no evidence that plaintiff specifically demanded the return of the sprayer and the tank. This argument is legally flawed because, under the agreement, defendant had to try to return those items to plaintiff or to make those items available for plaintiff to claim. The agreement says nothing that would require plaintiff to make a demand for the return of these items. In any event, as a factual matter, among other evidence demonstrating plaintiff's repeated demands for the return of his property, defendant specifically admitted, in response to requests for admissions, that plaintiff attempted to have the sprayer and tank returned to him as follows:

> **Request for Admission 7**: Admit Plaintiff attempted to have the implements returned to him after they were removed from his place of business.

> **Answer: Defendant objects to this Request because the term "farm implements" is vague, ambiguous, and subject to multiple meanings. In an effort to be responsive, without waiving the prior objections(s), and to the extent that "farm implements" means the sprayer and tank that were affixed to the John Deere tractor at the time of repossession, this Request is ADMITTED.**

(1916). To the contrary, plaintiff may still maintain a claim for conversion, and plaintiff can recover damages for the reasonable value for the loss of use during the period that the items were unlawfully kept from plaintiff. See *Maycroft*, 209 Mich at 192; *Cent Transp, Inc*, 139 Mich App at 546; 18 Am Jur 2d Conversion § 136. In sum, there is no merit to defendant's assertion that its actions were lawful regardless of whether the tank and sprayer were accessions, and defendant was not entitled to summary disposition on this basis. Instead, questions of fact remain as to whether the items were accessions and whether defendant's conduct regarding the items was lawful. See *Lakeside Resort Corp*, 274 Mich at 432; *Kane*, 93 Mich at 490. Accordingly, the trial court erred by granting defendant's motion for summary disposition.

Reversed and remanded for further proceedings. We do not retain jurisdiction. Having prevailed in full, plaintiff may tax costs under MCR 7.219.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Jane E. Markey