*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN MATTHEW LANGLEY,

Plaintiff-Appellee,

v

GENIE LYNN LANGLEY,

Defendant-Appellant.

UNPUBLISHED
October 14, 2025
11:56 AM

No. 374295
Huron Circuit Court
LC No. 23-207459-DM

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's judgment of divorce awarding the parties joint legal and physical custody of the minor child, BL, but with plaintiff receiving primary physical custody. [1] We vacate and remand.

## I. FACTS

The parties were involved in a 14-year relationship in which they had two children, LL and BL. After marrying in February 2022, the parties separated in April 2023 and plaintiff initiated divorce proceedings. At the time of this case's initiation, plaintiff had three criminal cases against him and was facing a number of criminal charges including assault with intent to do great bodily harm less than murder (AWIGBH) by strangulation, MCL 750.84, fourth-degree child abuse, MCL 750.136b(8), domestic violence, MCL 750.81(2), and interfering with electronic communications, MCL 750.540. The alleged victims were defendant and LL, and there was a no-contact order in place against plaintiff. At the preliminary examination, LL testified as to instances of physical abuse at the hands of plaintiff. In June 2022, plaintiff became angry and repeatedly struck LL with his fists and a belt, which left bruises on her body. BL was home when this occurred. Defendant intervened and stopped plaintiff. Plaintiff also struck LL on other occasions that summer. In January 2023, plaintiff shoved LL to the ground, grabbed her hair, and pushed her face into a

---

[1] The judgment of divorce also awarded defendant sole legal and physical custody of another minor child, LL, but the parties do not dispute this arrangement.

mattress, essentially smothering her. Defendant intervened and plaintiff eventually stopped. BL was not at home at the time. LL further testified that after this incident, plaintiff would sometimes hit both LL and BL in the back of their heads. Defendant testified about another incident in April 2023, in which plaintiff struck defendant. Plaintiff was ultimately convicted of AWIGBH by strangulation and domestic violence.

Throughout the entirety of this case, beginning in April 2023, both children resided with defendant, who had left the marital home to stay in a women's shelter for one month before moving near her family. During a parenting-time hearing in June 2023, defendant testified that she was concerned with plaintiff having parenting time because of substance abuse, gun violence, and domestic abuse. She described that there had been many other instances of domestic abuse that did not result in criminal charges and that such abuse had occurred in BL's presence. She described an incident close to their April 2023 separation in which plaintiff became upset, grabbed a firearm, and told defendant to shoot him. Defendant ran to the bathroom, but plaintiff followed with the firearm. BL woke up and witnessed plaintiff holding the firearm. In contrast, plaintiff's parents, who lived in a separate residence but spent extensive time with the children and both parties, testified that they had never witnessed or been aware of any such abuse or incidents. The trial court ordered supervised, virtual parenting time for plaintiff for 30 minutes each Sunday.

The trial court ordered the Friend of the Court (FOC) to investigate the case and create a recommendation regarding custody, parenting time, and child support, which was completed in December 2023. Plaintiff did not appear for the scheduled interview with the FOC. The FOC recommended that defendant receive sole legal and physical custody of BL and that plaintiff's limited parenting time continue, with the possibility of expanding this in the future. The FOC determined that there was an established custodial environment with defendant. The FOC also documented an extensive history of both law enforcement and Children's Protective Services (CPS) intervention involving plaintiff as the perpetrator of domestic violence against defendant, the children, and even plaintiff's parents. Such reports extended as far back as 2009 and were as recent as October 2023. Plaintiff objected to the recommendation, and the parties entered into mediation. In June 2024, the parties reached an interim agreement regarding BL's parenting time. They agreed that plaintiff could receive four hours of in-person, supervised parenting time every other Saturday. A show-cause hearing was held in July 2024 because defendant had not allowed plaintiff to exercise this new parenting-time arrangement. Defendant then agreed to allow the parenting time to begin, and the court did not make any findings of contempt. Plaintiff was awarded 12 hours of make-up time.

After a bench trial, the court awarded the parties joint legal and physical custody of BL, but with plaintiff having primary physical custody. The court determined that because its decision involved an initial custody determination, the preponderance-of-the-evidence standard applied. Moreover, it found that BL had an established custodial environment solely with plaintiff. The court weighed each of the best-interest factors and found that the majority of these either favored plaintiff or were neutral. The court awarded defendant parenting time on the second weekend of each month during the school year beginning on Friday evening and ending Sunday evening. For the summer, the parties would exercise a three-week rotating schedule in which defendant would receive two weeks of continuous parenting time and plaintiff would receive one week of continuous parenting time. Defendant now appeals.

## II. ANALYSIS

As an initial matter, plaintiff argues that much of defendant's brief should be stricken for relying on evidence outside the record. We disagree. "In an appeal from a lower court, the record consists of the original documents filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced." MCR 7.210(A)(1). An appellant may not expand the record on appeal. *Magley v M & W Inc*, 325 Mich App 307, 322 n 8; 926 NW2d 1 (2018).

Here, the preliminary examination, the FOC recommendation, and CPS cases that defendant cites to in her brief were all made part of the record and considered by the trial court. The trial court took judicial notice of the criminal cases against plaintiff, and plaintiff's counsel affirmatively agreed to such notice. Similarly, plaintiff's counsel did not raise any objection to the admission of the FOC recommendation, and the CPS matters were referred to within the recommendation and also testified to at the bench trial. "A party cannot stipulate to a matter and then argue on appeal that the resultant action was error." *LeFever v Matthews*, 336 Mich App 651, 670 n 3; 971 NW2d 672 (2021) (quotation marks and citation omitted). Therefore, plaintiff waived any challenge to this evidence on appeal. See *id*.

Defendant argues that the trial court's determination that BL had an established custodial environment solely with plaintiff went against the great weight of the evidence.

> In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. This Court will not interfere with the trial court's factual findings unless the facts clearly preponderate in the opposite direction. Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic. Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law. . . . This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments. [*Kuebler v Kuebler*, 346 Mich App 633, 652-653; 13 NW3d 339 (2023) (quotation marks and citation omitted).]

Before awarding custody, the trial court must first determine if the child has an established custodial environment with either of the parents. *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020). This "is an intense factual inquiry." *Id*. (quotation marks and citation omitted). An established custodial environment is an environment

> of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Id*. (quotation marks and citation omitted). See also MCL 722.27(1)(c).]

Such an environment may exist with either one or both parents. *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). "An established custodial environment may exist in more than one home and can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Marik v Marik*, 325 Mich App 353, 362; 925 NW2d 885 (2018) (quotation marks and citation omitted). Additionally, "in cases like this one, where the pre[-]separation custodial environment no longer exists, the relevant point in time for purposes of determining whether an established custodial environment exists is at the time the trial court makes its custody determination." *Sabatine v Sabatine*, 513 Mich 276, 287; 15 NW3d 204 (2024). "However, this does not mean that the circumstances of the parties and children prior to the separation should not carefully be evaluated. In some cases, the custodial environment prior to separation might be relevant to whether an established custodial environment exists at the time the trial court is set to enter the judgment of divorce." *Id*. at 288-289.

The established custodial environment determines the burden of proof. *Bofysil*, 332 Mich App at 243. "If a proposed change would modify the child's established custodial environment, the proponent must demonstrate by clear and convincing evidence that the proposed change is in the child's best interests," but if there is no modification of that environment, "the proponent need only demonstrate by a preponderance of the evidence that the proposed change is in the child's best interests." *Id*.; MCL 722.27(1)(c).

Here, the trial court's order stated, "First, this is an initial determination regarding both children . . . and the Court will apply a preponderance of the evidence standard." The trial court summarily determined "that despite the parties having participated in a long-term co-habitation relationship and subsequently marrying, an established custodial environment exists primarily with Plaintiff-father regarding" BL. No other facts or findings were set forth in support of this determination. "In actions tried on the facts without a jury…, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." MCR 2.517(A)(1). "Where a trial court fails to make a finding regarding the existence of a custodial environment, this Court will remand for a finding unless there is sufficient information in the record for this Court to make its own determination of this issue by de novo review." *Jack v Jack*, 239 Mich App 668, 670; 610 NW2d 231 (2000) (quotation marks and citation omitted). The trial court failed to make sufficient findings as to the established custodial environment. While the record contains sufficient information for this Court to determine de novo the established custodial environment at the time of the bench trial, more than a year has passed since the bench trial, and the factual circumstances have surely changed. Therefore, we remand for the trial court to make sufficient findings of fact as to the established custodial environment.

Furthermore, the trial court committed an error of law when it stated, "First, this is an initial determination regarding both children . . . and the Court will apply a preponderance of the evidence standard." Michigan law is clear that, even with an initial custody determination, the court must first determine if the child has an established custodial environment with either of the parents. See *Bofysil*, 332 Mich App at 242. This determination controls what burden of proof applies, not whether a court is deciding an initial custody determination. See *id*. at 243. And the absence of sufficient factual findings is critical here, as plaintiff's counsel conceded before this Court that the established custodial environment likely was with defendant at the time of the custody decision. There were numerous issues relative to plaintiff's demeanor, criminal history, and amount of time spent with BL in the time leading up to the initial custody decision. On remand,

the trial court should first determine the established custodial environment. Then, if the proposed change in custody would modify the child's established custodial environment, the trial court must find by clear and convincing evidence that the proposed change is in the child's best interests. But if there is no modification of the established custodial environment, the trial court must find by a preponderance of the evidence that the proposed change is in the child's best interests. MCL 722.27(1)(c).

Next, defendant argues that the trial court erred by failing to uphold a parenting-time agreement entered into by the parties before the bench trial. We disagree. Defendant failed to raise this argument in the trial court; thus, our review is for plain error affecting substantial rights. *Quint v Quint*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 368002); slip op at 7. "Parenting time shall be granted in accordance with the best interests of the child," MCL 722.27a(1), and, "[i]f the parents of a child agree on parenting time terms, the court shall order the parenting time terms unless the court determines on the record by clear and convincing evidence that the parenting time terms are not in the best interests of the child," MCL 722.27a(2).

Plaintiff objected to the FOC recommendation, and the trial court entered an order providing that the recommendation would not be entered as a final order. At the June 11, 2024 status conference, the parties were able to agree on plaintiff receiving four hours of in-person, supervised parenting time every other Saturday. The subsequent court order provided that parenting time could be expanded or reduced if the supervisor recommended it and if either party filed a motion. At a later status conference, the parties indicated that the outstanding issues were custody, parenting time, and BL's domicile. Furthermore, both parties' respective counsels addressed and argued the parenting-time issue at the bench trial. Therefore, contrary to defendant's assertions, there was no prior agreement regarding parenting time at the time of the bench trial. The court had entered several temporary orders regarding parenting time, but the parties never definitively agreed on parenting time, leaving this issue for the bench trial.

III. CONCLUSION

The trial court erred in determining the established custodial environment existed with plaintiff without making sufficient factual findings to allow for meaningful appellate review. Accordingly, we vacate the custody order and remand for further proceedings. On remand, the trial court shall conduct a new hearing, during which it must consider all relevant, up-to-date information, and determine the child's established custodial environment before conducting a best-interest analysis. *Griffin v Griffin*, 323 Mich App 110, 128; 916 NW2d 292 (2018).

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates