*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VALARIE BRANCH, Personal Representative of the
ESTATE OF JAMES D. BRANCH,

      Plaintiff-Appellant,

v

KEVIN RUDOLPH, SAFE TRANSPORTATION 4,
LLC, and SAFE TRANSPORTATION, LLC,

      Defendants-Appellees.

UNPUBLISHED
March 19, 2025
10:16 AM

No. 368071
Wayne Circuit Court
LC No. 21-003726-CB

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

In this civil action, plaintiff, Valarie Branch, as the personal representative of the Estate of James D. Branch, appeals as of right the trial court's order denying plaintiff's motion for reconsideration and dismissing all of plaintiff's claims against defendants, Kevin Rudolph, Safe Transportation, LLC (STL), and Safe Transportation 4, LLC (ST4L). The trial court originally granted summary disposition only in favor of Kevin and ST4L under MCR 2.116(C)(10), but on plaintiff's motion for reconsideration, the court decided to also grant summary disposition in favor of STL. We affirm the trial court's dismissal of plaintiff's claims against Kevin and ST4L, vacate the trial court's dismissal of plaintiff's claims against STL, and remand for further proceedings.

## I. BACKGROUND

Lee Rudolph and James owned and were members of STL—a transportation company organized as an LLC under the Michigan Limited Liability Company Act (MLLCA), MCL 450.4101 *et seq.* Kevin is Lee's brother and was a signatory on the company's bank accounts. When James died, Kevin began withdrawing funds from STL's accounts. Lee averred that he instructed Kevin to withdraw the money, which was used in the normal course of business. Kevin averred the same. Both also averred that Kevin was not an owner or member of STL. Shortly after James's death, Lee started a new company, ST4L. ST4L never conducted any business, though, at least according to Lee.

-1-

After plaintiff discovered Kevin's withdrawals from STL accounts, she requested an accounting of STL, which was allegedly ignored. As a result, plaintiff filed the instant litigation, naming Kevin, STL, and ST4L as defendants. Notably, plaintiff did not name Lee as a defendant. Plaintiff's complaint pleaded 11 claims, including violations of the MLLCA; fraud or silent fraud; breach of contract; unjust enrichment; breach of fiduciary duties; an accounting claim; and common-law and statutory conversion. Plaintiff asserted that ST4L could be held liable under a theory of successor liability and urged the trial court to allow plaintiff to pierce the corporate veil to sue Kevin directly. As relevant to this appeal, effectively all of these claims were brought on the theory that Kevin acted improperly when he withdrew money from STL's bank accounts in the weeks and months after James's death. Some more specific arguments included (1) that STL and Kevin converted plaintiff's interest in motor vehicles that had been used by STL but were titled to James personally and (2) requests for an accounting of STL under the common law and the MLLCA.

Only Kevin and ST4L answered plaintiff's complaint; STL never filed an appearance or answered the complaint. After more than two years of discovery, Kevin and ST4L moved for summary disposition on all of plaintiff's claims against them. Their arguments effectively boiled down to an assertion that Kevin was not a member or owner of STL, and did not commit any wrongdoing when he withdrew money from STL's bank accounts with the proper authorization from Lee, an owner and member of STL. Lee and Kevin both averred to these facts in affidavits. As for ST4L, the moving parties argued that ST4L was not a successor in interest to STL because, as averred by Lee in his affidavit, ST4L never conducted any business.

Plaintiff responded by arguing that there was a question of fact whether Kevin was a member of STL because a Bank Signature Card Document from Chase Bank (which identified who was authorized to remove money from STL's accounts) listed Kevin as a "member" on the accounts belonging to STL. Plaintiff did not mention that STL had not moved for summary disposition.[1]

Kevin and ST4L argued in reply that plaintiff had not presented sufficient evidence to create a genuine issue of material fact whether Kevin was a member of STL because the Chase Bank records were not probative of that issue.

The following day, plaintiff moved to amend the complaint, but the trial court denied the motion because discovery had closed and the case had been proceeding for over two years. Plaintiff then filed a supplemental response to the summary-disposition motion, which consisted of documentary evidence showing that Kevin signed withdrawal slips to get money from STL's accounts in the weeks following James's death. The documents did not provide, and plaintiff did not offer evidence to explain, specific information about what those funds were used for or where the funds went after they were withdrawn.

---

[1] Notably, despite that STL had not participated in the case up to this point, plaintiff had not sought the entry of a default against STL.

The trial court issued an opinion and order granting Kevin and ST4L's motion for summary disposition without oral argument. The trial court primarily based its decision on its determination that there was no genuine issue of fact whether Kevin was a member of STL. Put simply, the court reasoned that Kevin and Lee averred that Kevin was not a member of STL, and plaintiff did not present any evidence rebutting Kevin and Lee's sworn statements, as the bank records were not sufficient. Additionally, the trial court determined that there was no question of fact that Kevin acted properly when withdrawing money from STL's bank accounts because the only evidence in the record was that Kevin did so with proper authorization and in the normal course of business. Because all of plaintiff's claims against Kevin and ST4L relied on at least one of those two facts being at issue, the trial court determined that Kevin and ST4L were entitled to a grant of summary disposition on all of plaintiff's claims. The trial court did not discuss STL's lack of participation in the case and, indeed, stated that the summary-disposition order was final and disposed of all pending claims.

Plaintiff attempted to appeal that decision as of right, but this Court dismissed for lack of jurisdiction because of the pending claims against STL. *Estate of Branch v Rudolph*, unpublished order of the Court of Appeals, entered October 4, 2023 (Docket No. 367628). Back before the trial court, plaintiff moved for reconsideration of the summary-disposition opinion and order. Rather than challenge the reasoning and determinations of the trial court, plaintiff asserted that the claims against STL should be reinstated and prepped for trial. Without holding a hearing, the trial court issued an opinion and order denying plaintiff's motion for reconsideration. The trial court reiterated the determinations it made in its original opinion and order, but expanded the scope of the opinion and order to cover all claims against all defendants. The order thus disposed of all pending claims, and this appeal as of right followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). The trial court granted summary disposition to defendants under MCR 2.116(C)(10), which "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper under MCR 2.116(C)(10) where there is no "genuine issue regarding any material fact" and the moving party is entitled to summary disposition as a matter of law. *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

The initial burden in a motion under MCR 2.116(C)(10) rests with the moving party, who can satisfy its burden by either (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks and citation

omitted).  In response to a properly supported motion under MCR 2.116(C)(10), the nonmoving party cannot "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial."  *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006).

## III.  KEVIN'S MEMBERSHIP IN STL

Plaintiff argues that the trial court erred when it concluded that there was no genuine issue of material fact whether Kevin was a member of STL.  We disagree.

Before getting to the evidence provided to the trial court regarding whether Kevin was a member of STL, it is first important to consider what a member is with respect to an LLC like STL.  The parties agree that the MLLCA applies.  Under the MLLCA, a "member" is defined in relevant part as "a person that has been admitted to a limited liability company as provided in [MCL 450.4501] . . . ."  MCL 450.4102(2)(p).  MCL 450.4501, in turn, provides:

> (1) A person may be admitted as a member of a limited liability company in connection with the formation of the limited liability company in any of the following ways:
>
>> (a) If an operating agreement includes requirements for admission, by complying with those requirements.
>>
>> (b) If an operating agreement does not include requirements for admission, if either of the following are met:
>>
>>> (*i*) The person signs the initial operating agreement.
>>>
>>> (*ii*) The person's status as a member is reflected in the records, tax filings, or other written statements of the limited liability company.
>>
>> (c) In any manner established in a written agreement of the members.
>
> (2) A person may be admitted as a member of a limited liability company after the formation of the limited liability company in any of the following ways:
>
>> (a) If the person is acquiring a membership interest directly from the limited liability company, by complying with the provisions of an operating agreement prescribing the requirements for admission or, in the absence of provisions prescribing the requirements for admission in an operating agreement, upon the unanimous vote of the members entitled to vote.
>>
>> (b) If the person is an assignee of a membership interest, as provided in [MCL 450.4506].

(c) If the person is becoming a member of a surviving limited liability company as the result of a merger or conversion approved under this act, as provided in the plan of merger or plan of conversion. [MCL 450.4501(1) and (2).]

Bearing these statutory requirements in mind, we turn to the evidence presented to the trial court.

In support of their assertion that Kevin was not a member of STL, Kevin and ST4L relied on affidavits from Kevin and Lee. Kevin averred that he did not have any membership interest in STL, and Lee averred that only he and James were members of STL before James's death,[2] meaning that Kevin was not a member of STL. Kevin's and Lee's averments established that Kevin was not a member of STL. This shifted the burden to plaintiff to provide evidence showing that a genuine issue of fact existed regarding Kevin's membership in STL. See *Quinto*, 451 Mich at 362. In an attempt to meet this burden, plaintiff's sole evidence was a Bank Signature Card Document from STL's account with Chase Bank identifying Kevin as a "member."

As is evident from the summary of proofs, the parties have not identified any operating agreement or written agreement between any members of STL. This means that plaintiff cannot establish that Kevin was a member of STL under any of MCL 450.4501's provisions that require the existence of such agreements—MCL 450.4501(1)(a), (b)(*i*), or (c). As for MCL 450.4501(2)(a), there was no evidence any vote occurred related to whether Kevin would be made a member and, again, there was no operating agreement that could have prescribed the requirements for Kevin's admission as a member. For MCL 450.4501(2)(b), there was no evidence Kevin was an assignee of a membership interest. And for MCL 450.4501(2)(c), there was no evidence that STL was a surviving LLC of which Kevin was a member.

In light of the above, plaintiff could only potentially prove that Kevin was a member of STL under MCL 450.4501(1)(b)(*ii*), which states that a person is admitted as a member if "[t]he person's status as a member is reflected in the records, tax filings, or other written statements of the limited liability company." The lower court record does not contain any tax filings of STL, so the only possibility for plaintiff was to provide "records" or "other written statements" of STL. In an apparent attempt to comply with this requirement, plaintiff submitted the Bank Signature Card Document, which was on a Chase Bank letterhead and listed Kevin as a "member."

As is immediately obvious from the referenced content and appearance of the document, plaintiff's argument must fail because the Bank Signature Card Document is not a record or other written statement "*of the limited liability company*." MCL 450.4501(1)(b)(*ii*) (emphasis added). Instead, plaintiff provided the trial court with a record or other written document of Chase Bank. While it contains information on it suggesting that Kevin was a member of STL, the statute requires the information to be on records or statements of the LLC itself. This is important because the presumptive intent of the Legislature in codifying the statutory subsection at issue, which is discerned from the use of the phrase "of the limited liability company," was to allow LLCs to identify their own members in records or written statements produced by the LLC. See *Nyman v*

---

[2] There is no dispute that Lee correctly identified himself as a member and co-owner of STL.

*Thomson Reuters Holdings, Inc*, 329 Mich App 539, 544; 942 NW2d 696 (2019) (explaining that the primary goal of statutory interpretation is to give effect to the Legislature's intent). Such a goal would not be realized by allowing written statements or records of a bank to be used to establish membership in an LLC. Accordingly, because plaintiff did not present any evidence of Kevin being identified as a member in a record or written statement of STL, membership could not be established under MCL 450.4501(1)(b)(*ii*).

In an attempt to escape this conclusion, plaintiff contends that the trial court should have denied the motion for summary disposition because Kevin lacked credibility. To support this argument, plaintiff relies on Kevin's deposition testimony. That testimony was never provided to the trial court, however, so plaintiff cannot rely on it on appeal. See *Detroit Leasing Co v City of Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005) (holding that the provision of evidence "for the first time to this Court constitutes an expansion of the record, and a party may not expand the record on appeal"); *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). ("Our review is limited to the evidence that had been presented to the circuit court at the time the motion was decided."). At any rate, even if we ignored Kevin's and Lee's affidavits, there is still no evidence in the record affirmatively establishing that Kevin was a member of STL under the MLLCA for the reasons explained, so defendants would still be entitled to summary disposition on that issue. See *Quinto*, 451 Mich at 632 (explaining that the moving party is entitled to summary disposition if it can demonstrate that the nonmoving party's evidence is insufficient to establish an element of the nonmoving party's claim).

In sum, because all of plaintiff's arguments regarding Kevin's membership interest in STL lack merit, we affirm the trial court's determination that there was no genuine issue of fact with regard to that issue.

## IV. CLAIMS FOR CONVERSION AGAINST KEVIN

Plaintiff next argues that the trial court improperly dismissed plaintiff's claims of common-law and statutory conversion with regard to Kevin. We disagree.

"Conversion, both at common law and under the statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M & W Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (quotation marks and citation omitted). "For instance, a conversion may be committed by the refusal to surrender property on demand." *Dunn v Bennett*, 303 Mich App 767, 778; 846 NW2d 75 (2014). "In general, [conversion] is viewed as an intentional tort in the sense that the converter's actions are wilful, although the tort can be committed unwittingly if unaware of the plaintiff's outstanding property interest." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992).

"Treble damages for statutory conversion are available under MCL 600.2919a(1)(a), but, in addition to the common-law elements for conversion, a plaintiff claiming statutory conversion must show that the conversion was for the defendant's 'own use.' " *Magley*, 325 Mich App at 314 n 3, quoting *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 356; 871 NW2d 136 (2015). "[S]omeone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended

purpose." *Magley*, 325 Mich App at 314 n 3. "Good faith, mistake, and ignorance are not defenses to a claim of conversion." *Id.* at 315.

In this appeal, plaintiff contends that there was a question of fact whether Kevin converted plaintiff's membership interest in STL. Under MCL 400.4504(1) of the MLLCA, "[a] membership interest is personal property and may be held in any manner in which personal property may be held." It follows that plaintiff's membership interest in STL was personal property capable of being converted. *Id.*; *Magley*, 325 Mich App at 314.

Plaintiff argues that Kevin converted plaintiff's membership interest by effectively dissolving STL and liquidating its assets by withdrawing money from STL's bank accounts. However, when Kevin and ST4L moved for summary disposition, they provided affidavits from Kevin and Lee in which they each averred that Kevin was acting in the normal course of business. Lee, who undisputedly was a half-owner and full member of STL, averred that Kevin withdrew funds to ensure that the business continued to operate after James's death. Kevin averred that any money he withdrew was to be used for business purposes and was not retained by him. In response, plaintiff only provided the Bank Signature Card Document, which showed that Kevin was a signatory for STL's account with Chase Bank. Plaintiff did not present any evidence to dispute Kevin's and Lee's claims that Kevin acted within the normal course of business when withdrawing funds after James's death. In other words, after more than two years of litigation, plaintiff failed to produce any documentary evidence showing that STL's accounts were actually liquidated by Kevin. So, on the basis of the record provided to the trial court, the status of the accounts belonging to STL could have been effectively unchanged. Moreover, plaintiff did not present evidence from Kevin's private bank accounts, which presumably would show the deposit of significant sums of money after James's death if the allegations of conversion were true. Plaintiff also did not elicit any testimony from any witness to contradict Lee's and Kevin's claims.

Rather than present any of the above evidence, plaintiff merely engages in speculation and argument, insisting that Kevin liquidated STL's accounts and dissolved the business, which converted plaintiff's membership interest in STL. However, after Kevin and ST4L provided the affidavits, plaintiff could not "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Campbell*, 273 Mich App at 229. The complete failure by plaintiff to present evidence to support the claims of conversion left the trial court with evidence supporting only that Kevin was authorized to withdraw the funds, did so in the normal course of business, and did not personally or wrongfully retain those funds. As a result, there was no genuine issue of material fact that Kevin did not convert plaintiff's membership interest in STL because there was no evidence that Kevin committed "any distinct act of domain wrongfully exerted over [plaintiff]'s personal property in denial of or inconsistent with the rights therein." *Magley*, 325 Mich App at 314 (quotation marks and citation omitted). And because both common-law and statutory conversion require proof of the elements just mentioned, the trial court properly summarily disposed of both of those claims. *Id.*

## V. REMAINING CLAIMS AGAINST KEVIN AND ST4L

Plaintiff further argues that the trial court erred by sua sponte dismissing all of plaintiff's claims against Kevin and ST4L without proper notice and an opportunity to be heard. We disagree.

"The Due Process Clause provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]' " *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008), quoting US Const, Am XIV, § 1 (alteration in *Mettler Walloon*). "Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). "[A]t a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *CAJ v KDT*, 339 Mich App 459, 468; 984 NW2d 504 (2021) (quotation marks and citation omitted). Stated differently, "due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Wayne Co Treasurer Petition*, 478 Mich 1, 9; 732 NW2d 458 (2007) (quotation marks and citations omitted). "To comport with these procedural safeguards, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *CAJ*, 339 Mich App at 468 (quotation marks and citation omitted).

Plaintiff contends that Count II of the amended complaint was improperly dismissed sua sponte as to Kevin and ST4L because Kevin and ST4L did not move for summary disposition of Count II and the trial court did not explain why there was no genuine issue of material fact with respect to the claims alleged in that count. Count II alleged claims for fraud and silent fraud.[3] This Court in *Maurer v Fremont Ins Co*, 325 Mich App 685, 695; 926 NW2d 848 (2018), reiterated the elements of fraud and silent fraud as follows:

> Actionable fraud, also known as fraudulent misrepresentation, *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), requires that
>
> > (1) the [party] made a material representation; (2) the representation was false; (3) when the [party] made the representation, the [party] knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the [party] made the representation with the intention that the [opposing party] would act upon it; (5) the [opposing party] acted in reliance upon it; and (6) the [opposing party] suffered damage. [*M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998) (quotation marks and citation omitted).]
>
> Silent fraud, also known as fraudulent concealment, acknowledges that "suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud." *Id*. at 28-29 (quotation marks and citations omitted). But in order for silent fraud

---

[3] Because a claim of silent fraud is brought on the basis of an alleged omission of a material fact, it is the same as plaintiff's stated claim of fraudulent omission. See *M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998) (" 'Silent fraud,' also known as fraud by nondisclosure or fraudulent concealment, is a commonly asserted, but frequently misunderstood, doctrine.").

to be actionable, the party having a legal or equitable duty to disclose must have concealed the material fact with an intent to defraud. *Id.*; *Titan*, 491 Mich at 557.

Plaintiff's argument on appeal related to the dismissal of the fraud claims against Kevin and ST4L lacks merit. Plaintiff asserts that Kevin and ST4L's summary-disposition arguments and the trial court's summary-disposition decision did not adequately address the claim that Kevin committed fraud when he "took the Plaintiff's assets and actively concealed them," but the record reveals otherwise. In Kevin and ST4L's motion for summary disposition, they specifically requested summary disposition of the fraud claims against them, asserting, "Kevin Rudolph is not liable to Plaintiff for . . . fraud/fraudulent omission/silent fraud . . . ." Similarly, because the fraudulent actions or inactions were alleged to have been performed by Kevin and he had no interest in ST4L, Kevin and ST4L argued that the fraud claims against ST4L had to fail for the same reason. While the specific arguments referencing fraud focused on the fact that Kevin was not a member of STL and thus was not in a position to defraud plaintiff,[4] Kevin and ST4L also argued that there was no evidence that Kevin ever wrongfully withdrew or retained money rightfully belonging to STL. Thus, Kevin and ST4L's motion for summary disposition requested (1) summary disposition of the fraud claims because Kevin was not a member of STL or ST4L and (2) a determination that there was no genuine issue of material fact related to whether Kevin wrongfully took or kept funds belonging to STL.

This put plaintiff on notice that the foregoing issues were being raised and, given the basis of the fraud claims, would result in summary disposal of those claims against Kevin and ST4L. Plaintiff was then provided an opportunity to be heard regarding Kevin and ST4L's motion for summary disposition of the fraud claims by filing a response to Kevin and ST4L's motion for summary disposition. But rather than make arguments specifically related to fraud, plaintiff only provided one paragraph of analysis that addressed whether Kevin was a member of STL. Due process protects only the opportunity to be heard after reasonable notice; it does not consider whether a party seized the opportunity provided. *Bonner*, 495 Mich at 235.

Because plaintiff was provided reasonable notice of Kevin and ST4L's arguments regarding the claims of fraud and a reasonable opportunity to respond to them, plaintiff's argument that she was deprived of due process when the court dismissed Count II of the complaint fails. *Id.* Further, because notice and arguments were provided to the trial court, its decision to summarily dispose of plaintiff's fraud claims was not sua sponte. Indeed, summary disposition of the fraud claims was warranted for the same reasons stated with respect to the conversion claims—the only evidence on the record was that Kevin removed funds from STL's bank account in the normal course of business with the appropriate authority, and he did not unlawfully retain those funds.

---

[4] Contrary to plaintiff's assertions, Kevin's membership status with STL was relevant to the claim of silent fraud because a claim of silent fraud requires proof that the person who was alleged to have fraudulently suppressed information had a duty to disclose the fact at issue. *Maurer*, 325 Mich App at 695. The only duty to disclose even hinted at by plaintiff was Kevin's duty to disclose as a member of STL.

Because plaintiff's claims of fraud relied on this fact, they were required to fail given the lack of a genuine issue of material fact. *Maiden*, 461 Mich at 120.

Next, plaintiff contends that the trial court improperly summarily disposed of the claim for unjust enrichment against Kevin and ST4L. A claim for unjust enrichment will stand if the complaining party can establish that the other party received a benefit from the complaining party and it would be inequitable to the complaining party if the other party was allowed to retain the benefit. *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361397); slip op at 27-28.

As with the fraud claims, plaintiff is incorrect that Kevin and ST4L did not move for summary disposition of the claim for unjust enrichment. Notably, on appeal, plaintiff only claims that Kevin was unjustly enriched. In Kevin and ST4L's motion for summary disposition, they claimed that the unjust-enrichment claim must fail because Kevin "did not receive a benefit from Plaintiff . . . ." As noted above, Kevin and ST4L asserted that there was no evidence that Kevin wrongfully withdrew or retained any funds from STL's bank account. Thus, plaintiff was provided adequate notice of Kevin and ST4L's request for summary disposition of the unjust-enrichment claim and the reason for such, fulfilling the first half of the due-process inquiry. *Bonner*, 495 Mich at 235. Further, because Kevin and ST4L moved for summary disposition of the unjust-enrichment claim, the trial court did not decide it sua sponte.

Also, plaintiff was provided a reasonable opportunity to be heard regarding Kevin and ST4L's motion for summary disposition of the unjust-enrichment claim by being permitted to file a response to the motion. Based on plaintiff's response to Kevin and ST4L's motion, plaintiff apparently chose to not address Kevin and ST4L's arguments related to unjust enrichment, but that does not change the fact that plaintiff was provided a reasonable opportunity to be heard. Consequently, plaintiff's due-process concerns regarding the claim of unjust enrichment lacks merit. Moreover, the motion was properly granted for the reasons discussed above—there was no evidence Kevin ever unjustly received or retained a benefit from plaintiff or STL. This left no question of fact regarding a necessary element of unjust enrichment and warranted summary disposition under (C)(10). *Jackson*, ___ Mich App at ___; slip op at 27-28.

Next, plaintiff argues that the trial court improperly summarily disposed of the successor-liability claim against ST4L. "Michigan follows the traditional rule of successor liability," under which "the nature of the transaction determines the potential liability of predecessor and successor corporations." *Commonwealth Land Title Ins Co v Metro Title Corp*, 315 Mich App 312, 316-317; 890 NW2d 395 (2016) (quotation marks and citations omitted). "If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities." *Foster v Cone-Blanchard Machine Co*, 460 Mich 696, 702; 597 NW2d 506 (1999). "However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies." *Id*.

In their motion for summary disposition, Kevin and ST4L urged the trial court to summarily dispose of all of the claims against ST4L, which included the claim of successor liability. Kevin and ST4L, relying on Lee's affidavit, argued that ST4L never conducted any business. These assertions and arguments gave plaintiff adequate notice that Kevin and ST4L

-10-

were moving to dismiss plaintiff's claim of successor liability against ST4L. Plaintiff was then given the opportunity to be heard on Kevin and ST4L's argument that plaintiff's successor-liability claim should fail by being allowed to file a response to Kevin and ST4L's motion, but plaintiff's response to the motion failed to address Kevin and ST4L's successor-liability argument. In other words, plaintiff was then given an opportunity to be heard but failed to take it. In light of this, any claim of a due-process violation related to successor liability lacks merit—plaintiff had adequate notice and an opportunity to be heard on the topic. *Bonner*, 495 Mich at 235. Further, because Kevin and ST4L requested summary disposition on that ground, the trial court did not decide it sua sponte.

The claim of successor liability against ST4L also lacked merit. As is immediately evident from the mere premise of the caselaw summarized above, the doctrine of successor liability simply does not apply in this case. There is no evidence of a merger or purchase of STL by ST4L. Instead, the only evidence is that both LLCs existed at the same time. Lee averred that he registered ST4L as an LLC, but it never conducted any business nor accepted any funds from STL. There is no evidence to the contrary. As a result, the claim of successor liability against ST4L lacks merit. *Foster*, 460 Mich at 702.

Having considered all of plaintiff's arguments as related to Kevin and ST4L and finding no errors, we affirm the trial court's dismissal of the claims against those defendants.

## VI. CLAIMS AGAINST STL

Plaintiff lastly contends that the trial court erred when it dismissed the claims against STL when STL never moved for summary disposition or dismissal. We agree.

This issue presents a bizarre factual and procedural situation for us to consider. There is no dispute that plaintiff named STL as a defendant in the amended complaint. Plaintiff was not terribly specific about what claims applied to what parties, but plaintiff clearly pleaded claims of membership oppression and failure to provide an accounting under the MLLCA against STL. Plaintiff also asserted that STL violated the common law when failing to respond to plaintiff's request for an accounting. Lastly, plaintiff alleged that STL converted plaintiff's interest in the business and the vehicles titled to James before his death.

There does not appear to be any dispute that the original and amended complaints were served on STL. Further, the record does not contain an answer from STL as related to either of the complaints. Despite STL never answering either complaint, plaintiff never sought an entry of default against STL. Eventually, Kevin and ST4L moved for summary disposition, but STL did not participate in that motion. Indeed, STL still had not made an appearance nor answered the amended complaint. Kevin and ST4L's motion for summary disposition did not seek summary disposition of the claims against STL; instead, the motion sought summary disposition only as to the claims against Kevin and ST4L. When the trial court decided the motion, it granted summary disposition in favor of those two parties. Because summary disposition was not requested as to STL, the trial court's opinion and order did not dismiss the claims against STL. Nevertheless, the trial court stated that the opinion and order dismissing the claims against Kevin and ST4L was a final order that closed the case.

It seems that the parties and trial court only realized STL had never participated in the case after this Court dismissed plaintiff's appeal as of right from the summary-disposition order for lack of jurisdiction. This Court recognized plaintiff's claims against STL had never been dismissed, so they were still pending, despite the trial court stating that the case was closed. The remaining claims against STL divested this Court of jurisdiction.

When plaintiff was alerted to the issue, a motion for reconsideration was filed in the trial court. Plaintiff encouraged the trial court to set a trial date as to plaintiff's claims against STL considering that they were not dismissed. Instead of doing that, the trial court concluded that the reasoning provided in the opinion and order granting summary disposition to Kevin and ST4L also applied to STL. Or, at least, it could be implied that the trial court decided such when the language used in the opinion suggested that the trial court understood the original summary-disposition order as applying to Kevin and STL rather than Kevin and ST4L. In any event, the trial court plainly decided that all of the claims against all defendants were dismissed in the order denying reconsideration.

When plaintiff appealed that order as of right, this Court again noted some concerns about the procedural history of the case. Due to those concerns, we contacted Kevin and ST4L's attorney to ask whether he represented STL, and their attorney clarified that he only represented Kevin and ST4L. We then became concerned about whether the claim of appeal had been properly served on STL. Plaintiff informed the clerk's office that Kevin was the registered agent of STL and, therefore, service on him qualified as service on STL.[5]

All of this information serves to show that there was significant confusion about STL's involvement in the case. More importantly, as it relates to this appeal, it shows that the trial court was never provided with a motion or request to grant summary disposition in favor of STL. This also meant that, despite plaintiff's own failings regarding pursuing the litigation against STL, plaintiff was not put on notice that the claims against STL were being considered for summary disposition, nor was plaintiff presented with a reasonable opportunity to respond to any claims about whether STL was entitled to summary disposition. By dismissing STL from the case without first allowing litigation on the matter, the trial court violated plaintiff's due-process rights— plaintiff was not provided with notice and an opportunity to be heard regarding whether STL was entitled to summary disposition under subrule (C)(10). *Bonner*, 495 Mich at 235. Further, because the trial court did not dismiss the claims against STL until *after* plaintiff moved for reconsideration, the proceedings regarding reconsideration were not sufficient to cure the due-process concerns related to the summary disposal of plaintiff's claims against STL. Accord *Equity Funding, Inc v Village of Milford*, 342 Mich App 342, 350; 994 NW2d 859 (2022) ("Where a court considers an

---

[5] Plaintiff provided us with STL's registration as an LLC with the Michigan Department of Licensing and Regulatory Affairs, which showed Kevin as STL's resident agent. This was the first time that plaintiff ever presented this evidence. As a result, we cannot and have not considered it with respect to plaintiff's challenges to the trial court's decision, which did not have the benefit of considering the evidence. *Detroit Leasing Co*, 269 Mich App at 237 (holding that the provision of evidence "for the first time to this Court constitutes an expansion of the record, and a party may not expand the record on appeal").

issue sua sponte, due process can be satisfied by affording a party an opportunity for rehearing.") (quotation marks and citation omitted). As a result, the only remedy is to vacate the portion of the reconsideration order that dismissed the claims against STL and remand for further proceedings.

## VII. CONCLUSION

The trial court's opinion and order granting summary disposition in favor of Kevin and ST4L, and dismissing all of the claims against them, was not issued in error, and we affirm those decisions. But the trial court improperly dismissed the claims against STL because plaintiff was not provided adequate notice and an opportunity to be heard on the issue of whether summary disposition was warranted in favor of STL. To ensure plaintiff receives the appropriate due process, we vacate the dismissal of the claims against STL and remand to the trial court for it to address those claims.

Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle